Don **VANNERSON**, Appellant,

v.

Dorothy Jeane **VANNERSON**, Appellee,

**and**

**Southwestern Bell Media, Inc.,**
**Appellee/Intervenor.**

No. 01–91–00040–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

June 3, 1993.

Rehearing Denied July 8, 1993.

Jerry Guerinot, Houston, for appellant.

Kenneth T. Fibich, Rhonda R. Chandler, J. Lawton Henry, D. Brent Wells, Harry L. Tindall, Houston, for appellee.

Before OLIVER–PARROTT, C.J., and COHEN and O'CONNOR, JJ.

## OPINION

OLIVER–PARROTT, Chief Justice.

This is an appeal from a post-answer default judgment. After 30 years of marriage, appellee, Dorothy Jean Vannerson, sued appellant, Don Vannerson, for divorce. Having previously obtained a judgment against appellant, Southwestern Bell Media, Inc. intervened in the divorce action. In 84 points of error, appellant complains of the trial court's failure to grant his motion for new trial, the characterization and division of the property and debt, the appointment of a receiver, the granting of injunctive relief and the withdrawal of his attorney. We affirm the judgment as reformed.

The uncontroverted facts are that on July 23, 1990, the trial court sent all parties notification the case would be heard on August 29, 1990. With appellant's knowledge, appellant's counsel was permitted to withdraw on August 6, 1990, and thereafter, appellant proceeded pro se. On August 29, 1990, the case was called to trial before Judge Thomas Stansberry. Appellant did not appear. The trial court proceeded without appellant, and took evidence. The judge granted the divorce, divided the property, apportioned the debt, and entered other orders.

After the trial, appellant obtained counsel and filed a motion for new trial. Because he would be called as a witness at the hearing on the motion for new trial, Judge Stansberry recused himself from hearing the motion. After a full hearing, Judge Daniel Sklar denied the motion for new trial.

## I. Appellant's Motion for New Trial

■ In points of error one through ten, appellant complains the trial court abused its discretion in denying his motion for new trial. The appropriate standard of review requires that we not disturb the trial court's decision in the absence of an abuse of discretion. *Jackson v. Van Winkle*, 660 S.W.2d 807, 809 (Tex.1983); *Litchfield v. Litchfield*, 794 S.W.2d 105, 106 (Tex.App.— Houston [1st Dist.] 1990, no writ).

Over 50 years ago, the supreme court in *Craddock v. Sunshine Bus Lines, Inc.*, 134 Tex. 388, 133 S.W.2d 124 (1939), set forth three criteria that must be present before the trial court may grant a motion for new trial after a default judgment:

1) The failure of defendant to answer was not intentional or the result of conscious indifference, on his part, but was due to an accident or mistake;

2) The defendant alleges a meritorious defense; and

3) The motion for new trial is filed at a time when its granting will not cause delay or otherwise work injury to the plaintiff.

*Craddock*, 133 S.W.2d at 126. While *Craddock* spoke to no-answer default judgments, the criteria are equally applicable to post-answer default judgments. *LeBlanc*

*v. LeBlanc,* 778 S.W.2d 865, 865 (Tex.1989); *Ivey v. Carrell,* 407 S.W.2d 212, 213 (Tex. 1966).

At the hearing on the motion for new trial, Mrs. Vannerson stipulated appellant had asserted a meritorious defense. Contrary to appellant's statement in his brief, Mrs. Vannerson's counsel did not admit appellant's defense *was* meritorious, only that it had been *asserted.* Because of this stipulation, we will discuss only whether appellant met the first and third prongs of the *Craddock* test.

### A. Conscious Indifference

■ The term "conscious indifference" means the failure to take some action that would seem indicated to a person of reasonable sensibilities in the same circumstances. *Johnson v. Edmonds,* 712 S.W.2d 651, 653 (Tex.App.—Fort Worth 1986, no writ).

At the hearing on his motion for new trial, appellant testified that even though he was aware the trial was set for Wednesday, August 29, 1990, he left for Washington D.C. on business on Monday, August 27, 1990. On Tuesday, August 28, appellant called the court from Washington D.C. to inquire whether the case would proceed to trial the next day.

Judge Stansberry refused to speak with appellant directly. Instead, appellant spoke to Judge Stansberry's court coordinator, Esther Ramirez. Ramirez read him a letter, that Mrs. Vannerson's counsel, Kenneth T. Fibich, had sent to the court. In the letter, Mrs. Vannerson requested the case be reset so that Judge Stansberry, and not a master, could hear the case. Appellant said he never received a copy of the letter; however, Ramirez read it to him over the telephone. Appellant testified Ramirez told him he needed to contact Fibich and discuss the matter with him.

Appellant said that when he called Fibich, Fibich immediately told him about the reset letter. Appellant agreed to the reset. Appellant testified that Fibich never told him he would appear and request a reset, nor did Fibich say it was his intention to go ahead and try the case on August 29.

After speaking with Fibich, appellant called Ramirez back and informed her he had spoken with Fibich, who had assured him the case would be reset. Appellant understood Ramirez to say that everything appeared to be in order with Fibich's letter and appellant's agreement with the letter.

We note that while appellant testified he and Fibich discussed the possibility of a settlement meeting the next week, appellant never testified Fibich told him the setting would indeed be passed. And, while appellant said he gave Ramirez his telephone number in Washington, D.C., and asked him to call him if he needed to appear, he did not testify he received confirmation from the court the case was passed.

Appellant also made much of the fact that he had never missed a previous trial setting and that he had three prepaid return tickets so he could return at anytime. He did not, however, introduce any evidence of these tickets.

The testimony of Judge Stansberry and Ramirez controverts appellant's version of the facts. Judge Stansberry testified he had received Fibich's request for a reset. He said he instructed Fibich the parties were to appear as scheduled, and at that time, he would decide whether to hear the case himself, refer it to the master, or postpone the trial setting.

Concerning appellant's call from Washington, Judge Stansberry testified he instructed Ramirez to tell appellant the trial was scheduled to go forward unless it was passed by all the parties, that it was scheduled for 8:30 a.m., the next day, and that everyone was expected to be there. Judge Stansberry could not recall if he was present when Ramirez spoke to appellant; however, Ramirez had worked for him for eight years, and his instructions to her were always followed.

Ramirez testified she told appellant to talk to Fibich and *if* Fibich agreed to pass the case and *if* Fibich so advised the trial court, then appellant did not need to appear the next day for trial. When appellant called back, he said he had spoken with Fibich, and Fibich had agreed to pass the

case. Ramirez specifically denied stating she told appellant everything appeared to be in order, and he would be notified of when to appear. Ramirez said Fibich never called to indicate the trial would be passed.

Fibich testified concerning his conversation with Judge Stansberry, and his testimony was consistent with that of the judge's. Fibich also testified about appellant's telephone call to him. He said appellant called him about 4:40 p.m. the day before trial, and informed him he did not have a lawyer and did not want to go trial. Fibich said he told appellant of the court's instruction to appear. Fibich said he did not tell appellant the case would be passed, and he did not agree to pass the trial.

In *Gotcher v. Barnett*, 757 S.W.2d 398, 401 (Tex.App.—Houston [14th Dist.] 1988, no writ), the court held that where a defendant's statement concerning conscious indifference is uncontroverted, then *Strackbein v. Prewitt*, 671 S.W.2d 37 (Tex.1984), "clearly requires a trial court to conclude the defaulting party's failure to answer was the result of mistake or accident." *Gotcher*, 757 S.W.2d at 401 (citing *Strackbein*, 671 S.W.2d at 38–39). But when the defendant's statements are controverted by the party who obtained the default judgment in an evidentiary hearing, the trial court must make "an essentially factual inquiry into the acts and knowledge of the defaulting defendant to determine whether his failure to answer was intentional." *Gotcher*, 757 S.W.2d at 401.

In this case, the trial court conducted a full evidentiary hearing during which appellant's assertions concerning his failure to appear were directly controverted, not only by appellee's counsel but by disinterested court personnel, including the trial judge who heard the case.

After denying appellant's motion for new trial, Judge Sklar entered the following findings of fact:

8. The day before trial [Appellant] telephoned Mrs. Vannerson's counsel and stated he was in Washington, D.C., and would not appear for the trial setting. [Appellant] indicated that he had received notice of the setting, but had not asked the court to reset and expected it to be postponed.

10. The trial court advised [Appellant] through its clerk that the case would not be continued and that Mr. Vannerson should be present at trial.

13. [Appellant's] failure to appear at the trial setting was the result of conscious indifference on his part and not the result of accident or mistake.

■ A trial court's findings of fact will not be disturbed where there is some evidence in the record to support them. *National Bond and Inv. Co. v. Atkinson*, 254 S.W.2d 885, 887 (Tex.Civ.App.—Amarillo 1952, writ dism'd). Where there is probative evidence to support the findings, they are binding on the reviewing court even if there is conflicting evidence suggesting different conclusions. *Aerospatiale Helicopter Corp. v. Universal Health Serv. Inc.*, 778 S.W.2d 492, 498 (Tex.App.—Dallas 1989, writ denied), *cert. denied*, 498 U.S. 854, 111 S.Ct. 149, 112 L.Ed.2d 115 (1990).

■ Appellant's action in not hiring another lawyer, in leaving for Washington, D.C. two days before trial, and in not calling to inquire about the status of the trial setting until the afternoon of the day before trial, is evidence from which the trial court could have concluded that appellant did not act like a person of reasonable sensibilities would have acted if faced with similar circumstances. *Johnson*, 712 S.W.2d at 653. Judge Sklar heard all the witnesses' testimony, and he was in the best position to judge their demeanor and determine their credibility. The testimony of Judge Stansberry, Ramirez, and Fibich provides evidence supporting the trial court's finding that appellant's failure to appear at trial was the result of conscious indifference and not the result of accident or mistake.

### B. Delay or Injury to Plaintiff

■ The third prong of the *Craddock* test requires that the granting of a motion for new trial will not cause delay or otherwise work an injury to the plaintiff.

In his brief, appellant merely makes the conclusionary statement that because he has offered to pay Mrs. Vannerson's expenses, the granting of a new trial will not cause delay, or work injury upon her. In exercising its fact finding power, the trial court is not bound to accept conclusive statements of a witness. *Royal Zenith Corp. v. Martinez*, 695 S.W.2d 327, 330 (Tex.App.—Waco 1985, no writ); *Folsom Inv., Inc. v. Troutz*, 632 S.W.2d 872, 875 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). Moreover, the record is replete with instances showing how appellant previously attempted to delay the trial.

At the time the trial court entered the default judgment, the case had been pending for 30 months. Appellant admitted he hired state Senator Carl Parker as his attorney when the case was set for trial, and then used legislative continuances to postpone the trial. This occurred on at least four occasions. Fibich testified he had repeatedly tried to get the case to trial, but was unable to do so because of legislative continuances filed by Senator Parker. Fibich also testified he had tried six times to notice appellant's deposition, and he could never get appellant to appear without a court order.

In the final decree, Mrs. Vannerson was awarded the parties' residence and a substantial amount of personal property contained in the residence. However, during the 30 months the case was pending, appellant by agreed temporary orders, occupied the house. By temporary orders pending appeal, appellant continues to occupy the residence. There were allegations that appellant was violating the trial court's temporary orders and disposing of community property, and the trial court found that after Mrs. Vannerson filed for divorce, appellant disposed of a substantial amount of property.

Considering the past conduct of appellant and testimony of Mr. Fibich, there was certainly evidence upon which the judge could reasonably conclude that the granting of a new trial would have caused delay and would have worked injury on appellee.

Appellant has failed to satisfy two of the three *Craddock* requirements. As such, the trial court did not abuse its discretion in overruling appellant's motion for new trial.

Points of error one through ten are overruled.

## II. Characterization of Property

In points of error 11 through 30, appellant complains the trial court erred in its characterization of the parties' property and debt. Appellant claims there is no evidence or insufficient evidence to support the trial court's judgment or findings.

### A. Standard of Review

■ In reviewing "no evidence" points, the reviewing court considers only the evidence and inferences that tend to support the finding, and disregards all evidence and inferences to the contrary. *Responsive Terminal Sys., Inc. v. Boy Scouts of Am.*, 774 S.W.2d 666, 668 (Tex.1989); *Davis v. City of San Antonio*, 752 S.W.2d 518, 522 (Tex.1988). If there is any evidence of probative force, i.e., more than a scintilla, to support the findings, the point must be overruled and the finding upheld. *Southern States Transp., Inc. v. State*, 774 S.W.2d 639, 640 (Tex.1989); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ In reviewing a factual insufficiency of the evidence challenge, the court of appeals must consider weigh, and examine all of the evidence that supports and is contrary to the finding. *Lofton v. Texas Brine Corp.*, 720 S.W.2d 804, 805 (1986), *rev'd,* 777 S.W.2d 384 (Tex.1989). The court should set aside the finding only if the evidence standing alone is too weak to support the finding, or the finding is so against the overwhelming weight of the evidence that it is manifestly unjust and clearly wrong. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ).

■ Findings of fact in a case tried to the court have the same force and digni-

ty as a jury's verdict upon jury questions. *City of Clute v. City of Lake Jackson*, 559 S.W.2d 391, 395 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.). The trial court's findings are not conclusive, however, when a complete statement of facts appears in the record. *Middleton v. Kawasaki Steel Corp.*, 687 S.W.2d 42, 44 (Tex.App.—Houston [14th Dist.] 1985), *writ ref'd n.r.e. per curiam*, 699 S.W.2d 199 (Tex.1985). The judge's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them, "by the same standards which are applied in reviewing the legal or factual sufficiency of the evidence" that support jury findings. *Gill Sav. Ass'n v. Chair King, Inc.*, 783 S.W.2d 674, 676–77 (Tex.App.—Houston [14th Dist.] 1989), *aff'd in part, modified in part*, 797 S.W.2d 31 (Tex.1990). Although a trial court's conclusions of law may not be challenged for factual sufficiency, the trial court's legal conclusions drawn from the facts may be reviewed to determine their correctness. *Mercer v. Bludworth*, 715 S.W.2d 693, 697 (Tex.App.—Houston [1st Dist.] 1986, writ ref'd n.r.e.).

### B. Stipulation of Meritorious Defense

■ Appellant asserts Fibich's statements regarding his meritorious defense are an admission the trial court erred in dividing the property. During the hearing on appellant's motion for new trial Fibich made the following statements concerning whether appellant had fulfilled the *Craddock* requirements:

> I will stipulate for the record that they have alleged the meritorious defense because I think you probably have that allegation in any divorce case. So, to get into the merits of whether or not the division was proper or not is irrelevant to the inquiry.
>
> . . . .
>
> I have agreed that they have alleged a meritorious defense; so, they don't have to prove that ground.
>
> . . . .
>
> I think there is sufficient allegations that a meritorious defense exists.

Appellant construes these statements as judicial admissions and cites us to *Roosevelt v. Roosevelt*, 699 S.W.2d 372, 374 (Tex.App.—El Paso 1985, writ dism'd), for the proposition that a judicial admission establishes the issue in dispute as a matter of law in behalf of the adversary of the one making such admission.

We do not construe counsel's statements as judicial admissions. A complete reading of the record makes it clear that counsel was admitting a meritorious defense had been asserted. By no means did counsel ever state he stipulated appellant's asserted meritorious defenses were true, or that the defenses were proved. Appellant's contention is overruled.

### C. General Characterization of Property

■ The Texas Family Code provides that:

(a) A spouse's separate property consists of:

(1) the property owned or claimed by the spouse before marriage;

(2) the property acquired by the spouse during marriage by gift, devise, or descent; and

(3) the recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage.

(b) Community property consists of the property, other than separate property, acquired by either spouse during marriage.

TEX.FAM.CODE ANN. § 5.01 (Vernon Supp. 1993). The code also provides that "property possessed by either spouse during or on dissolution of marriage is presumed to be community property. The degree of proof necessary to establish that property is separate property is clear and convincing evidence." TEX.FAM.CODE ANN. § 5.02 (Vernon Supp.1993).

At trial, Mrs. Vannerson introduced exhibits one and two. Trial exhibit one is a list of property Mrs. Vannerson claims as her separate property. Trial exhibit two is a list of property Mrs. Vannerson asserts is

appellant's separate property. The trial court found that:

21. The properties listed on [Mrs. Vannerson's] Exhibit "1" were given to Mrs. Vannerson as gifts during the marriage or were owned by her prior to marriage or were acquired during the marriage by inheritance or were purchased with property owned by her prior to marriage.

22. The items of property listed on [Mrs. Vannerson's] Exhibit "2" were given to [appellant] as gifts during the marriage or were owned by him prior to marriage or were acquired during the marriage by inheritance or were purchased with property owned by [appellant] prior to marriage.

Appellant complains there was no evidence or insufficient evidence to support the trial court's findings. We disagree.

At trial, Fibich asked Mrs. Vannerson the following questions concerning trial exhibits one and two:

Q: I am going to show you what's been marked Petitioner's Exhibit 1.

A: Yes. It's titled, "Wife's separate Property."

Q: Are the items that are contained on this sheet property that was given to you as gifts during your marriage or property you owned prior to your marriage and property you acquired during your marriage by inheritance or property that was purchased with property owned prior to marriage?

A: Yes, sir.

Q: Petitioner's Exhibit 2 which we have identified as "Husband's Separate Property," is that property which you acknowledge to be separate property of your husband?

A: Yes, sir.

This testimony tracks the language contained in section 5.01(a) for characterizing property as separate property. TEX.FAM. CODE ANN. § 5.01(a) (Vernon Supp.1993). Because appellant did not appear at trial, he presented no evidence concerning the characterization of the property.

Points of error 11, 12, 13, and 14 are overruled.

## D. Appellant's Separate Property

In points of error 15, 16, and 17, appellant also criticizes the award of property to him that the evidence showed was not owned by either party. The specific item appellant complains about is a $52,000 Arabian horse and colt. As stated above, the evidence to be evaluated is the trial evidence. Evidence adduced at trial supports appellant's assertion of mischaracterization.

Listed on Mrs. Vannerson's trial exhibit two, was the item, "Arabian horse/colt, SOLD," with a value of $52,000. Mrs. Vannerson stated that after she filed for divorce, appellant sold the mare and colt, and she did not receive any of the proceeds of the sale. The testimony and the trial exhibit provide direct evidence that the horse and colt were not owned by either of the parties at the time they were awarded to appellant.

We recognize the trial court has wide discretion in dividing the marital estate. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981), and we presume the trial court exercised its discretion properly. *Id.* at 699. The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but rather, whether the court acted arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985) *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). In dividing the estate of the parties, the trial court shall order a division of the property "that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX.FAM.CODE ANN. § 3.63(a) (Vernon 1993). The trial judge may order an unequal division of marital property where a reasonable basis exists for doing so. *Massey v. Massey*, 807 S.W.2d 391, 398 (Tex.App.—Houston [1st Dist.] 1991, writ requested) (citing *Murff*, 615 S.W.2d at 698–99). This Court will correct the trial court's division of marital property only when an abuse of discretion has been shown. *Murff*, 615 S.W.2d at

698; *Massey*, 807 S.W.2d at 398. It is the duty of this Court to indulge every reasonable presumption in favor of the proper exercise of discretion by the trial court in dividing the community estate. *Murff*, 615 S.W.2d at 698; *Massey*, 807 S.W.2d at 398.

■ The court may consider many factors in making an unequal division of property, including education, respective earning power, business and employment opportunities, physical health, probable future need for support, the award of custody, the size of the parties' separate estates, the length of the marriage, and fault in its breakup. *Massey*, 807 S.W.2d at 398 (citing *Murff*, 615 S.W.2d at 699). Additionally, the trial court may take into account a spouse's dissipation of the estate. *See Massey*, 807 S.W.2d at 401–403 (based on jury verdict that husband committed constructive fraud, trial court was entitled to award wife's equalization for the property depleted unfairly from community estate); *Reaney v. Reaney*, 505 S.W.2d 338, 340 (Tex.Civ.App.—Dallas 1974, no writ) (court took into account the husband's dissipation of approximately $53,000 of community assets when dividing the estate); *Pride v. Pride*, 318 S.W.2d 715, 718 (Tex.Civ.App.—Dallas 1958, no writ) (trial court rendered a money judgment against the husband for the wife's share of $3,000 he concealed).

■ Considering the evidence concerning the alleged sale of the horse and receipt of the proceeds by appellant, we find that the existence or nonexistence of the horse at the time of division did not materially affect the just and right division of the property. *See Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex.1985).

Points of error 15, 16, and 17 are overruled.

### E. Community Property

In points of error 18 through 24, and 28 through 30, appellant asserts the evidence is legally and factually insufficient to support the trial court's findings of fact and conclusions of law construing certain property items as community property. Appellant also asserts the trial court erred in considering Mrs. Vannerson's inventory because it was not introduced into evidence.

### 1. Findings of Fact and Conclusions of Law

■ At trial, Mrs. Vannerson introduced her exhibit three, which is a listing of all the property owned by the parties that is community property. She testified exhibit three contained "a division of the personal property in your house and values attributed that personal property." Appellant asserts $17,040 of his separate property is referenced in trial exhibit three, and Mrs. Vannerson was awarded $12,475 of it. He claims the exhibit also lists $14,704 of their children's property, and that $69,985 of nonexistent property was awarded to him. Finally, appellant claims another $316,300 of community property should have been included on exhibit three, but Mrs. Vannerson claimed it all as her separate personal property on her trial exhibit one.

Concerning the property listed in this exhibit, the trial court entered the following finding of fact:

23. Petitioner's Exhibit "3" contains a list of property acquired by the parties during marriage located in the parties['] home. The values set forth on Exhibit "3" are the values of the property.

He also entered the following conclusion of law:

8. The property listed in Mrs. Vannerson's Inventory and the property listed on Petitioner's Exhibit "3" is the community property of the parties.

Pursuant to the Texas Family Code, all the property of the parties is presumed to be community property. TEX.FAM.CODE ANN. § 5.02. On exhibits one and two, Mrs. Vannerson delineated the property that was her separate property and appellant's separate property. We have already held the trial court properly found the items listed in those exhibits to be the separate property of the listed spouse. The remaining property can only be community property.

As the party attacking the characterization of the property, appellant bears the

burden of proof to show, by clear and convincing evidence, that the trial court mischaracterized the property. Appellant did not do so here.

First, Mrs. Vannerson testified the items contained on trial exhibit three were the parties' community property; trial exhibit three was introduced; appellant did not appear at trial and offer any evidence concerning the characterization of the property. This is sufficient to uphold the trial court's finding and conclusion. Second, appellant offered no evidence at trial concerning the value of the property complained of, nor did he offer any testimony concerning the characterization of specific items. Where an appellant does not provide values on any of the property to the trial court, he cannot on appeal complain of the trial court's lack of complete information in dividing that property. *LeBlanc v. LeBlanc*, 761 S.W.2d 450, 453 (Tex.App.—Corpus Christi 1988), *aff'd*, 778 S.W.2d 865 (Tex. 1989).

We conclude that, because appellant did not present trial evidence to overcome the presumption that the property of the parties is community, the trial court did not err in finding the property listed on trial exhibit three was community property.

## 2. Introduction of Inventory into Evidence

Relying on *Cliff v. Huggins*, 724 S.W.2d 778 (Tex.1987) and *Wilson v. Williamson*, 586 S.W.2d 148, 150 (Tex.Civ. App.—Houston [1st Dist.] 1979, no writ), appellant further explains that, because the conclusion of law was based on Mrs. Vannerson's inventory, and the inventory was not introduced into evidence, the conclusion of law is erroneous. Appellant claims the

inventory was never served on him and lacks a proper certificate of service. *See* TEX.R.CIV.P. 21, 21a.

Concerning lack of service of the inventory, appellant raises this complaint for the first time on appeal, and it is waived. TEX. R.APP.P. 52(a). Concerning the introduction of the inventory into evidence, Mrs. Vannerson's inventory was filed on August 29, 1990, the day of trial. Attached to the inventory were exhibits A, B, and C. These exhibits correspond to trial exhibits one, two, and three. In addition to listing a proposed division of the marital property, however, the inventory also referred to (1) property that was allegedly disposed of by appellant after the divorce suit was filed, (2) community property real estate, (3) motor vehicles, boats, and ski equipment, (4) accounts with various financial institutions, and (5) debts and liabilities of the parties, both joint and several. A review of the findings of fact and conclusions of law filed by the trial court, makes it apparent the court considered and relied on Mrs. Vannerson's inventory when dividing the property and debt.[1]

We have reviewed the statement of facts from the trial and cannot find where the inventory was formally introduced. Mrs. Vannerson does not claim the inventory was introduced, but responds that the inventory was filed on the day of trial before the rendition of judgment and before the trial court signed the decree. She asserts that, because the inventory is required to be filed, and the trial court may take the judicial notice of matters in its files, *Smith v. Smith*, 757 S.W.2d 422, 426 (Tex.App.— Dallas 1988, writ denied), the trial court properly considered Mrs. Vannerson's inventory when characterizing the property.

---

1. The findings of fact referencing the inventory are as follows:

 18. After Mrs. Vannerson filed this suit for divorce, [Appellant] disposed of a substantial amount of property, described on Mrs. Vannerson's Inventory as "Property Disposed of by Respondent After Suit Filed." The value of each item of property is that set out in Mrs. Vannerson's Inventory.

 25. The remaining property (other than that listed on Exhibits "1", "2", and "3") listed as community property on Mrs. Vannerson's In-

ventory was acquired by the parties during marriage. The values set forth in the Inventory are the values of the property. The findings of fact referencing the inventory are as follows.

 27. The lots listed in Mrs. Vannerson's Inventory as real estate Items B through M are lots that [appellant] took as collateral on bonds. The value of these lots is $250,000 in the aggregate.

 28. The parties' debts and liabilities are listed on Mrs. Vannerson's Inventory.

Appellant cites the court to *Poulter v. Poulter*, 565 S.W.2d 107 (Tex.Civ.App.—Tyler 1978, no writ). In *Poulter*, the appellant complained the trial court's judgment improperly divested him of title to his separate real property. Mr. Poulter sought to prove the separate character of the property by referring to an inventory sworn and filed by Mrs. Poulter. The court found the inventory offered no legal support for Mr. Poulter's position *on appeal* because the inventory was not introduced into evidence and could not be considered as such. *Id.* at 110.

In *Bokhoven v. Bokhoven*, 559 S.W.2d 142 (Tex.Civ.App.—Tyler 1977, no writ), the case relied upon by the *Poulter* court, the court of appeals would not consider an unsworn inventory that was not admitted into evidence. *Id.* at 144. While the inventory at issue here was sworn to by Mrs. Vannerson, whether the inventory was sworn was not the controlling issue in *Bokhoven*. There, the court relied on the fact that the inventory was not introduced into evidence: "An unsworn inventory and appraisement was filed in the papers of the cause and was referred to briefly by the appellant in his testimony, but it was never introduced into evidence. We cannot consider this inventory and appraisement *on appeal* because it is not before us." *Id.* (Emphasis added.)

Because we find *Poulter* and *Bokhoven* distinguishable from the present case, we decline to apply them here. The inventory was filed and included in the papers before the trial court and was referred to by the trial court. The trial court could have taken judicial notice of what was contained in the file. We conclude the trial court did not err in relying on the inventory in reaching its conclusion of law number eight. Even if the court had erred, we do not find appellant was harmed. The court had before it trial exhibit three, which contained a listing of the community property. That exhibit was admitted into evidence and was properly before the court.

Points of error 18 through 24 and 28 through 30 are overruled.

### F. Allocation of Debt

In points of error 25, 26, and 27, appellant asserts the trial court erred in finding, "the parties' debts and liabilities are listed on Mrs. Vannerson's Inventory" because there is factually insufficient and legally insufficient evidence to support the finding.

The inventory listed the parties' liabilities. The mortgage on the parties' homestead was listed as a joint liability. As her liabilities, Mrs. Vannerson listed store and gasoline credit cards debt, a loan from Woodway Bank & Trust, her attorney's fees, and various doctor's fees. Appellant was apportioned liability for four Internal Revenue Service tax liens totaling $702,129.63, and four judgments taken against appellant totaling $394,187.07, including the judgment in favor of Southwestern Bell. In addition to the inventory, the trial court also heard Mrs. Vannerson's trial testimony:

Q: With respect to the other property that you and your husband own, those being the lots that are listed on your inventory, are you asking the court to award those lots to Mr. Vannerson?

A: Yes, sir.

Q: On your inventory, there contains a list of liabilities that are primarily open accounts that you are willing to take as your responsibility, is that correct?

A: Yes, sir.

Q: Are you asking the court to assess to Mr. Vannerson the sole liability of all other indebtedness that exists, that including numerous judgments that are against him?

A: Yes, sir.

Q: And other claims against him?

A: Yes, sir.

The trial court had before it Mrs. Vannerson's testimony and the inventory. We conclude the trial court did not abuse its discretion in apportioning the parties' debt as it did.

Points of error 25, 26, and 27 are overruled.

## G. Remaining Property Issues

Appellant's points of error 34 through 55, raise complaints concerning the trial court's division of the property and allocation of the debt. Point of error 56 claims the trial court's conclusion in the judgment that the judgment disposes of all issues between the parties is erroneous as a matter of law. In points of error 57 through 62, appellant asserts the trial court erred in appointing a receiver to sell the parties' homestead and supervise the division of the personal property. Points of error 63 and 64 urge the trial court erred in enjoining him from interfering with Mrs. Vannerson's possession of the property awarded. Points of error 65 through 70 address the error of the trial court in entering orders and pertaining to the community property homestead of the parties.

The complaints contained in points of error 34 through 55 and 56 can be discussed together.

It must be remembered that the trial court has wide discretion in these matters, and this Court must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Castle v. Castle*, 734 S.W.2d 410, 413 (Tex. App.—Houston [1st Dist.] 1987, no writ). The trial court specifically found the division of property in the divorce decree was fair, just, and equitable; and that appellee was entitled to a disproportionately higher share of the parties' community estate.

The community estate of the parties, net of debt secured by property save and except the Internal Revenue Service debt, was $1,379,429.00. Community debts totaled $1,187,424.00. Appellee was awarded community property totaling $140,493.00; and was assigned responsibility for debts totaling $91,708.00. The net award to appellee was $48,785.00. Appellant was awarded community property totaling $848,975.00; and was assigned responsibility for debts totaling $706,717.00. The net award to appellant was therefore $142,-258.00.

 This division of property is the one made by the trial court based on the record presented to it at the divorce trial. One complaining of a division of property must be able to demonstrate from *evidence in the record* that the division was so unjust and unfair as to constitute an abuse of discretion. *Wallace v. Wallace*, 623 S.W.2d 723, 725 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.). A trial court's division will not be disturbed on appeal unless it appears *from the record* that the division was clearly the result of an abuse of discretion. *Mogford v. Mogford*, 616 S.W.2d 936, 944 (Tex.Civ.App.—San Antonio 1981, writ ref'd n.r.e.). In this case, the record to be considered by this Court in determining whether the trial court abused its discretion is the same record upon which the trial court's decision was made; that is, the record made at the August 29, 1990, divorce trial, and that record supports the trial court's division.

Appellant also complains of the trial court's order that the Sugar Creek residence be sold, the proceeds used to satisfy the first lien mortgage and the Internal Revenue Service liens, with any balance inuring to the benefit of Mrs. Vannerson. Appellant does not challenge the trial court's determination that the Sugar Creek residence is the parties' homestead, but does challenge the findings that tax liens have been filed because appellant failed to file tax returns without appellee's knowledge.

 In divorce proceedings, if the homestead cannot be partitioned, it is subject to sale and a division of the proceeds. *McIntyre v. McIntyre*, 722 S.W.2d 533, 537 (Tex.App.—San Antonio 1986, no writ); *see also Brock v. Brock*, 586 S.W.2d 927, 930 (Tex.Civ.App.—El Paso 1979, no writ). Appellee testified the Sugar Creek residence had an approximate value of $450,000.00 and, after payment of the first lien mortgage, an equity of approximately $390,-000.00. However, appellee also testified there were federal tax liens on the property in the amount of $701,000.00 as a result of appellant's failure to file, giving the property a negative net equity. She further testified she had no knowledge of appellant's failure to file, as he had told her the returns were filed. It was appellee's re-

quest that the property be ordered sold to satisfy the tax liens, with the balance of the proceeds, *if any,* inuring to her benefit. Based on this uncontroverted testimony, the trial court was justified in believing there was no equity in the homestead, and in ordering it sold to pay the IRS liens.

It is undisputed that the IRS may levy on homestead property in Texas for the payment of delinquent federal taxes. *U.S. v. Rodgers,* 461 U.S. 677, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983). The IRS's lien against the Sugar Creek residence is therefore a valid one, and one upon which the IRS may foreclose. Whether or not the IRS chooses to exercise its lien rights is not a material consideration for the trial court. The IRS is a secured creditor and the trial court, in the exercise of its discretion, considered it fair and equitable that the security for the lien be sold and the proceeds used to pay the secured creditor.

 Appellant also contends the trial court erred in assigning to him all income tax liabilities of the parties from the date of marriage through the calendar year 1986, and all debts incurred by either party during marriage and not expressly assumed by Mrs. Vannerson. The division of debts was made by the trial court as part of its division of community property. The parties' liabilities are factors to be considered in making a just and right division. *Finn v. Finn,* 658 S.W.2d 735, 748 (Tex.App.Dallas 1983, writ ref'd n.r.e.). A divorce court has authority and discretion to impose the entire tax liability of the parties on one spouse. *Benedict v. Benedict,* 542 S.W.2d 692, 698 (Tex.Civ.App.— Fort Worth 1976, writ dism'd) (husband failed to file tax returns and trial court assigned all tax liability to him). Considering appellee's testimony that she did not know that appellant did not file tax returns, it cannot be said the trial court abused its discretion in assigning responsibility for the taxes to appellant. Additionally, given appellee's testimony of the numerous judgments against Mr. Vannerson, it was not error for the trial court to assign responsibility for those judgments to appel-

lant. Points of error 34 through 56 are overruled.

 Appellant's points of error 57 through 62 object to the receiver. His argument is that receivership is a drastic remedy, to be exercised only in extraordinary circumstances and only in those situations where the property is in present danger of being lost, removed, or materially injured. Appellant's argument has been considered and rejected by the courts of this State:

> She [the appellant in a divorce action] contends that under TEX.CIV.PRAC. & REM. CODE ANN. § 64.001(b) (Vernon 1986), the court may appoint a receiver only if the property was in danger of being lost, removed or injured. It is established that TEX.FAM.CODE ANN. § 3.63 (Vernon 1993) controls the division of property on divorce, not the statute upon which [appellant] relies. The court has broad powers to enlist the aid of a receiver in order to effectuate its orders and judgments. The appointment of a receiver is left to the discretion of the trial court.

*Young v. Young,* 765 S.W.2d 440, 444 (Tex. App.—Dallas 1988, no writ) (citation omitted); *see also Parr v. First State Bank of San Diego,* 507 S.W.2d 579, 583 (Tex.Civ. App.—San Antonio 1974, no writ) (when considering a request for appointment of a receiver in an independent suit by a creditor, the necessity for the receivership is not to be weighed under the rules applicable to a receivership ancillary to a divorce action). Also, when community property is not subject to partition in kind, the divorce court can appoint a receiver and order the property sold and the proceeds divided between the parties in a manner deemed by the trial court to be just, fair, and equitable. *Hailey v. Hailey,* 160 Tex. 372, 331 S.W.2d 299, 303 (1960). The trial court did not abuse its discretion in appointing a receiver to effectuate its orders and judgments. Points of error 57 through 62 are overruled.

As stated above, points of error 63 through 66 each raise complaints about a different one of the four injunctions entered by the trial court in the final decree

of divorce. Respectively, those injunctions (1) prohibit appellant from "taking any action ... that would interfere with or prevent [Mrs. Vannerson] from obtaining possession of the personal property [awarded to her]"; (2) prohibit appellant from in any manner distributing or showing to others certain "photographs, videos, cards, letters, journals, diaries or other hand written memoranda directed to or written by [Mrs. Vannerson]"; (3) require appellant to vacate the parties' Sugar Creek residence by 5:00 p.m. on October 15, 1990; and (4) prohibit appellant from going about or entering the parties' Sugar Creek residence after that time and date. The essence of appellant's complaint about each of these injunctions is that there are no pleadings to support the issuance of a permanent injunction; he asserts that consequently the trial court had no power to enter the injunctions it entered.

The injunctions about which appellant complains all concern items of property the ownership of which was at issue in the divorce action and which were awarded to Mrs. Vannerson. In *Morgan v. Morgan,* 657 S.W.2d 484, 493–94 (Tex.App.—Houston [1st Dist.] 1983, writ dism'd), we said "[t]here is no question that a trial court may issue an injunctive order, under its broad discretion in a divorce action, to temporarily safeguard community property from encumbrance or transfer by one of the spouses *pending a final division."* The same is true with respect to *all* real and personal property subject to distribution in the course of a divorce, whether that property is ultimately found to be community property or separate property. Moreover, in general, a trial court has inherent power in any proceeding before it to preserve its own ability to render effective relief and give effect to its judgment. *City*

*of Dallas v. Wright,* 120 Tex. 190, 36 S.W.2d 973, 975 (1931); *Hale County v. Davis,* 572 S.W.2d 63, 66 (Tex.Civ.App.—Amarillo 1978, writ ref'd n.r.e.).

The first three injunctions in question, although not expressly reciting a time limitation, were clearly not permanent injunctions. They were entered for the purpose of enforcing the trial court's judgment concerning division of property.[2] By their very nature, these injunctions were no longer necessary once the division of property was accomplished, and Mrs. Vannerson was in possession of the property awarded to her. They were temporary injunctions. Although the question is somewhat closer in the case of the fourth injunction, we believe the same analysis applies to that injunction as well.

To clarify appellant's duties, we will reform the final decree of divorce so that the first three injunctions shall expressly state that without further order or finding of the trial court, they shall cease to operate when possession of the respective items of property they concern has been turned over to Mrs. Vannerson in accordance with the property division embodied in the final decree of divorce; appellant is enjoined from going about or entering the Sugar Creek residence only during the period between 5:00 p.m. on Monday, October 15, 1990, and the sale of that property pursuant to the divorce decree. Points of error 63 through 66 are overruled.

Points of error 67, 68, and 69 each raise different complaints about the sale of the parties' Sugar Creek residence ordered by the trial court. Respectively, they assert (1) that there was no evidence that the sale was "in the best interest of the parties"; (2) in the alternative, that there was insufficient evidence; and (3) that the trial court's conclusion that the proceeds of the

**2.** Appellant cites Tex.Fam.Code Ann. § 3.70 (Vernon Supp.1993) for the proposition that Mrs. Vannerson had an adequate remedy at law, and that the injunctions were therefore improper. Appellant's reliance on § 3.70 for this proposition is misplaced. Mrs. Vannerson has once litigated and established her right to the specified items of property, in the course of the divorce action. To relegate a successful litigant to a remedy tantamount to a second suit is not always adequate. The statutory scheme recognizes this fact; section 3.76(c) expressly states "[t]his subchapter does not detract from or limit the general power of a court to enforce its orders by appropriate means." *See also Spradley v. Hutchison,* 787 S.W.2d 214, 218 (Tex. App.—Fort Worth 1990, writ denied) (trial court retains "inherent power" to clarify or enforce its decree after expiration of its plenary power over the judgment).

sale, after payment of the first mortgage lien, should be used to satisfy the 1982 federal income tax liens filed of record on the property as of August 29, 1990, is "erroneous as a matter of law." In support of these points, appellant presents two arguments. First, he asserts that the Sugar Creek residence was his principal residence and therefore exempt under federal law from levy for satisfaction of federal income tax liens for nonpayment of his federal income tax. It follows, argues appellant, that it was error for the trial court to order a sale of the property to satisfy that lien. Appellant asserts that at a minimum the trial court should first have examined the federal Internal Revenue Code provisions creating the exemption to determine whether a forced sale was necessary to satisfy the tax liens. Second, appellant argues that if it was indeed necessary to sell the property to satisfy the tax liens, then the trial court failed adequately to take account of the property's status as the parties' homestead under Texas law. Specifically, he asserts that the trial court failed to follow the dictates of *Mallou v. Payne & Vendig*, 750 S.W.2d 251, 255 (Tex. App.—Dallas 1988, writ denied).[3] We address each of these arguments in turn.

■ Section 6331 of the Internal Revenue Code[4] provides in pertinent part:

§ **6331. Levy and distraint.**

(a) **Authority of Secretary.**—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property *(except such property as is ex-*

*empt under section 6334)* belonging to such person or on which there is a lien provided in this chapter for the payment of such tax.

26 U.S.C.S. § 6331(a) (Law.Co-op Pamp. 1993).

(emphasis added). As noted in section 6331, section 6334 of the Code sets forth specific exemptions to the otherwise-permissible scope of the broad power to levy. The provisions of section 6334 pertinent here are:

§ **6334. Property exempt from levy.**

(a) **Enumeration.**—There shall be exempt from levy—

. . . . .

(13) **Principal residence exempt in absence of certain approval or jeopardy.**—Except to the extent provided in subsection (e), the principal residence of the taxpayer (within the meaning of section 1034).

. . . . .

(e) **Levy allowed on principal residence in case of jeopardy or certain approval.**—Property described in subsection (a)(13) shall not be exempt from levy if—

(1) a district director or assistant district director of the Internal Revenue Service personally approves (in writing) the levy of such property, or

(2) the Secretary finds that the collection of tax is in jeopardy.

26 U.S.C.S. § 6334(a)(13), (e)(1, 2) (Law.Co-op Pamp.1993).

Appellant asserts that neither of the events described in section 6334(e)(1) and (2) had occurred at the time of the trial court's judgment;[5] as his principal residence,[6] the

---

3. Appellant cites this case for the proposition that before a Texas homestead can be subjected to a forced sale by court order, the exempt portion—if any—must be ascertained and if possible, the nonexempt portion segregated from the exempt portion; and that if *segregation is not possible*, then the trial court must determine in advance of any such sale what percentage of the value of the whole property is nonexempt and must order that the remainder of the total value be remitted to the debtor following the forced sale.

4. Unless otherwise noted, all citations are to sections of Title 26, United States Code ("Internal Revenue Code" or "the Code").

5. Although the trial court made no fact findings on this matter, there is evidence in the record from which it can be inferred that both of these events have occurred. We do not analyze this matter further because, as shall appear momentarily, it has no legal significance in light of the case law discussed in the text concerning levy under section 6331 and tax liens.

6. The question of whether the Sugar Creek property was appellant's principal residence for purposes of the section 6334(a)(13) exemption is

Sugar Creek residence therefore was not subject to a levy under section 6331 to satisfy the federal income tax liens upon the property; and accordingly it was error for the trial court to order the property sold to satisfy those tax liens. Appellant's argument assigns undue significance to an exemption from levy.

Levy under section 6331 is but one of several distinct methods by which the federal government may undertake collection of income taxes. The Code also authorizes collection by an in personam civil action against a delinquent taxpayer under section 7401 or by a civil action under section 7403 to enforce an existing tax lien. *See generally* 4 B. BITTKER AND L. LOKKER, FEDERAL TAXATION OF INCOME, ESTATES, AND GIFTS 111.6 (1992). Property exempt from levy under section 6331 can nevertheless have a federal tax lien impressed upon it and be subject to a suit under section 7403 to enforce that lien. *U.S. v. Barbier*, 896 F.2d 377, 379 (9th Cir.1990). Exemption from levy addresses whether one particular alternative *remedy* is available to the federal government, rather than undermining the validity or enforceability of the underlying debt as the appellant seems to be urging upon us. Appellant's first argument is unavailing.

■ Appellant's second argument, that the trial court failed adequately to take account of the property's status as the parties' homestead under Texas law when it ordered the sale of the Sugar Creek residence, is also unpersuasive. It is clear that the entire Sugar Creek property, including both the nonexempt portion and the exempt portion, if any, was subject to forced sale under section 7403 to satisfy the federal tax liens. *U.S. v. Rodgers*, 461 U.S. 677, 691–94, 103 S.Ct. 2132, 2141–43, 76 L.Ed.2d 236 (1983). It is equally clear that the trial court had the authority to order the property sold for that purpose.

*See Hammond v. Hammond*, 197 S.W.2d 502 (Tex.Civ.App.—Fort Worth 1946, no writ). The *Mallou* case cited by appellant is distinguishable from the instant case [7] and, in any event, is rendered inapposite by *Rodgers*.

Point of error 70 complains of the trial court's order that Mrs. Vannerson "pay the principal, interest, tax and insurance escrow on the Sugar Creek Residence awarded to her." We have already concluded that property division was proper, including the awarding of the Sugar Creek residence to her. Accordingly, Mr. Vannerson has no standing to raise any complaint about any further orders directed only at Mrs. Vannerson and concerning only the property awarded to her. *Nixon v. Nixon*, 348 S.W.2d 438, 439 (Tex.Civ.App.—Houston 1961, writ dism'd); *see also Phelan v. Phelan*, 471 S.W.2d 605, 609 (Tex.Civ.App.—Beaumont 1971, no writ). Point of error 70 is overruled.

## IV. Tax Liens and Income Tax Returns

■ In points of error 79 though 82, appellant claims there is no evidence or insufficient evidence to support the trial court findings that tax liens have been filed against the parties and that Mrs. Vannerson had no knowledge appellant had not filed tax returns.

Appellant complains of the following findings:

19. Tax liens have been filed against the Vannerson's' property because [appellant] failed to file income tax returns from 1980 to 1986.

20. Mrs. Vannerson had no knowledge that her husband had not filed income tax returns.

Mrs. Vannerson testified as follows:

Q: Now, Mrs. Vannerson are you aware of some tax liens that have been filed?

A: Yes, sir.

---

governed by section 1034 and the cases interpreting it. It is unnecessary for us to decide this question, and for purposes of evaluating appellant's argument, we merely assume, without deciding, that the property was his principal residence under section 1034.

7. *Mallou* involved the forced sale of a Texas homestead to pay *unsecured* creditors of one of the parties to a divorce. *Mallou*, 750 S.W.2d at 252.

Q: And did those tax liens exceed, at one time, in excess of $700,000?

A: Yes, sir.

Q: And would you tell the court what information you have about those tax liens? How did they come to be filed against you?

A: From 1980 to 1986 [appellant] failed to file income taxes; and it's my understanding that the taxes are all taken care of except the year 1982, and that's where the discrepancy is.

Q: There is still a substantial tax lien?

A: It's showing $701,000.00

Q: Did you have knowledge your husband did not file the income taxes?

A: Absolutely not. Because he told me we did.

We find this was sufficient evidence to support the findings. Because appellant did not appear at trial, the trial court heard no controverting evidence.

Points of error 79 through 82 are overruled.

## V. Withdrawal of Appellant's Attorney

In his last two points of error, appellant complains of the trial court's finding number six that "[Appellant's] counsel had previously moved to withdraw. [Appellant] did not oppose the withdrawal and court approval was given to [appellant's] counsel to withdraw by Order signed August 6, 1990."

▮ The appellate rules place the burden on an appellant to see that a sufficient record is presented to this Court to show error requiring reversal. *Englander Co. v. Kennedy*, 428 S.W.2d 806, 807 (Tex. 1968). In the context of these points of error, appellant must show he raised an opposition to his counsel's withdrawal. The record reveals appellant's counsel sought permission from the trial court to withdraw by filing a motion to withdraw as attorney of record. Appellant does not assert he did not receive notice of the motion

to withdraw. The motion to withdraw was granted by signed order dated August 6, 1990. There is nothing in the record to indicate appellant opposed the motion to withdraw; there is no request for a hearing on the motion to withdraw; appellant does not raise this as a complaint in his motion for new trial.[8]

Points of error 83 and 84 are overruled.

The judgment of the trial court dividing the community property of the parties is reformed as outlined herein (see points of error 63 though 66).

As reformed, the judgment of trial court is affirmed.

O'CONNOR, Justice, dissenting.

I dissent.

### Conscious indifference

To my mind, Mr. Vannerson established that his failure to appear was the result of an accident or mistake, and was not the result of conscious indifference. Trial settings are rescheduled daily in Texas with this same scenario: A lawyer calls the court, the court informs the lawyer if the other party will agree to a reset, the case will be passed, the lawyer calls the other lawyer, and then calls the court again to tell the court the other lawyer agreed. The only difference in this case is that the party, not his lawyer, called the court and the other lawyer.

The majority, in considering whether there was conscious indifference, considered that Mr. Vannerson left town, not that he swore he would return for the hearing if necessary. As Mr. Vannerson said in his brief, his divorce case had been pending for over 30 months, and he had to leave town occasionally for business. Mr. Vannerson had never missed another hearing. Mr. Vannerson swore that he had return airline tickets with him and would have flown

---

8. We recognize that a motion for new trial is not required to preserve a legal or factual sufficiency point of error in a bench trial. Tex. R.Civ.P. 324(b); Tex.R.App.P. 52(d). We are merely noting an instrument in which appellant could have raised this complaint, but chose not to.

back to Houston in time for the hearing if he had thought his presence was required. After talking to Fibich, he believed they agreed to a reset.

When Mr. Vannerson initially called the court, the clerk of the court read to him a request by Fibich to pass the case. Appellant testified Ramirez told him he needed to contact Fibich and discuss the matter with him. Mr. Vannerson gave Ramirez his telephone number in Washington, D.C., and asked her to call him if he needed to appear. Even Judge Stansberry testified he instructed Ramirez to tell appellant the trial was scheduled to go forward unless it was passed by all the parties.

Mr. Vannerson's actions in calling the court, the other attorney, calling the court again, leaving his telephone number with the clerk and Fibich, are inconsistent with the notion of conscious indifference. In *Beard v. McKinney*, 456 S.W.2d 451, 455 (Tex.Civ.App.—Houston [1st Dist.] 1970, no writ), this Court held that a lawyer's actions in taking discovery and setting the case for trial were inconsistent with the notion of conscious indifference. So here too, we should consider that the relevant inquiry is the day before the hearing. Today's holding in looking at whether Mr. Vannerson left town at all that week, will jeopardize the travel and business plans of all parties and lawyers involved in litigation.

### Delay or injury to plaintiff

In analyzing the third prong of the *Craddock* test, which requires the appellant to show that the granting of a motion for new trial will not cause delay or otherwise work an injury to the plaintiff, the majority holds that appellant did not meet his burden.

The majority criticizes Mr. Vannerson because he merely offered to pay Mrs. Vannerson's expenses and said the granting of a new trial would not cause delay or work an injury upon her. I do not know what else Mr. Vannerson could have said to meet this element. In *Angelo v. Champion Restaurant Equipment Co.*, 713 S.W.2d 96, 98 (Tex.1986), the Supreme Court said that it was not necessary for the defendant to

state it was willing to reimburse the plaintiff for the expenses incurred in getting the default. The Court said that the fact the plaintiff could have moved for a default judgment for three and three-quarters years, and did not, along with the allegation that no injury or delay would be caused, was enough to meet this element of the *Craddock* test.

The majority uses earlier continuances to show that Mr. Vannerson's right to be present at his own trial was waived because of his failure to prove this element. The majority considers the past conduct of Mr. Vannerson and holds there was some evidence upon which the judge could reasonably conclude that the granting of a new trial would have caused delay and would have worked injury on the appellee. I think the majority is in error.

I would sustain point of error one.