

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-09-035-CV

---

ROBERT RICHARD TAYLOR, II                              APPELLANT

V.

KATHY TAYLOR                                            APPELLEE

------------

FROM THE 360TH DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

Appellant Robert Richard Taylor, II, an inmate proceeding pro se, appeals the trial court's final decree entered in his divorce case.  In thirteen issues,[2] he

---

[1] *See* Tex. R. App. P. 47.4.

[2] We note that on the page labeled "Issues To Be Presented," Robert sets forth eight "issues."  The "issues" listed there, however, are not legal issues that can be resolved and include things like "7.  Possession Order" and "8.  Appellant's desire to bring forth oral arguments personally in front of the Court."  In the interest of justice, we have done our best to broadly construe

argues that the trial court erred by including certain provisions in the final decree. Because there is no relief available to Robert, we will affirm.

## II. Procedural Background

Appellee Kathy Lynn Taylor filed for divorce from Robert. At the final trial, Robert represented himself and appeared pro se via telephone from prison. Robert did not object to any of Kathy's testimony, including her testimony that he had pleaded guilty to and had been convicted of possessing child pornography.

Robert testified at the hearing as follows,

> In one of my motions, I did make a counterclaim against the petitioner for -- the reason for divorce was adultery, cruelty, and abandonment. And I did that according to the relief that she was asking for. I do not feel that I was responsible for the loss of our home. She did make enough at the time to make payments on that. And by her own admission, she just let it go. That's a quote. I should not be responsible for that. And I certainly should not be responsible for her attorney [fees].
>
> I love my son. I love all three of them. I love [my minor son]. Even though there were questions at the beginning whether he was legitimately mine, I have accepted him as my son. I also accepted Robert James Taylor and Steven Lee Taylor as my sons. I love them very much.
>
> I do not want to get into the reason why I pled guilty to these charges after 18 months of saying I was not guilty. I will not get into that with this Court. However, I do intend to do everything I

the arguments raised throughout Robert's brief and do not limit our consideration to the "issues" set forth on the "Issues To Be Presented" page. *See* Tex. R. App. P. 38.9.

can to reverse that decision and to obtain my release from this incarceration.

I do -- I am very apologetic that our marriage is ending this way. I certainly did not expect it. I wish Kathy all of the happiness she can obtain. But I would like to be able to have the opportunity to see my son and to correspond with my son without interference. That's all for the moment.

On cross-examination, Robert testified that he had been sentenced to fifteen years' imprisonment; that he had a parole eligibility date of December 31, 2008; that his minimum release date was March 9, 2014; and that his maximum release date was April 6, 2022.

After hearing the evidence, the trial court orally granted the divorce, appointed Kathy as the sole managing conservator, appointed Robert as the possessory conservator, ordered Robert to pay child support in the amount of $250 per month beginning sixty days after his release from prison,[3] ordered that access to the child be supervised at all times by Kathy, awarded each party the property in his or her possession, and made each party responsible for his or her attorney's fees. Approximately one month after the final trial, the trial court signed the final decree of divorce. The final decree, unlike the oral pronouncement, orders Robert to pay child support of $250 per month with the

---

[3] ... After ordering Robert to pay child support, the trial court stated on the record, "However, let me comment that it sounds like your first possible release date may be after the child attains the age of 18 and graduates from high school. So it may be that those child-related issues will be moot."

first payment being due on February 1, 2009; orders that any employer of Robert's must withhold from his earnings for child support; and orders Robert to pay fifty percent of healthcare expenses that are incurred on behalf of the minor child. The final decree awards all property to Kathy and requires Robert to pay all debts, charges, liabilities, and obligations held solely in his name or held jointly in his and Kathy's name. Robert did not file a motion for new trial.

## III. ROBERT'S ISSUES AND REQUESTS FOR RELIEF

We liberally construe Robert's brief to encompass the following arguments and requests for relief: (1) A request that the words "injury or exploitation of children" (as used to describe his conviction) be removed from the final decree; (2) a request that the word "finally" (as used to describe his conviction) be removed from the final decree; (3) a request that the final decree be changed to reflect the actual ruling of the court regarding child support and a request that a detailed account balance be provided to him; (4) a request that all deductibles and co-pays be forgiven until his child support obligation is to begin and that the final decree be corrected to reflect these changes; (5) a statement that he was entitled to the appointment of an attorney ad litem because his parental rights were modified; (6) a request to reserve the right to paternity testing; (7) a request that the final record reflect the circumstances of his conviction; (8) a request that this court remind Kathy of her duties to

4

keep Robert apprised of the health and welfare of the minor child; (9) a request that any and all health care costs not begin until sixty days after his release; (10) an objection to the warning on page eighteen of the final decree, which deals with paying for health insurance, and a request that it not apply to him until sixty days after his release; (11) a request that all debts that were accepted jointly by the parties be the sole responsibility of Kathy; (12) a statement that he has not been requested to sign the final decree and that he does not intend to sign it in its current form; and (13) a request for this court to consider a more equitable division of property as outlined in his addendum.

## IV.  NOT ENTITLED TO APPOINTMENT OF ATTORNEY

We will begin with Robert's fifth issue in which he argues that he was entitled to the appointment of an attorney.  We review a trial court's failure to appoint trial counsel in a civil case for an abuse of discretion.  *See* Tex. Gov't Code Ann. § 24.016 (Vernon 2004); *Gibson v. Tolbert,* 102 S.W.3d 710, 712–13 (Tex. 2003).  A civil litigant has no general constitutional right to appointed counsel.[4]  *See Sandoval v. Rattikin,* 395 S.W.2d 889, 893–94 (Tex.

---

[4] Cases involving juvenile delinquency, termination of parental rights, and court-ordered mental health services are exceptions to this general rule. *See* Tex. Fam. Code Ann. §§ 51.10, 107.013 (Vernon Supp. 2009); Tex. Health & Safety Code Ann. § 574.003 (Vernon 2003).  None of the exceptions apply here.

Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.), *cert. denied*, 385 U.S. 901 (1966). "[I]n some exceptional cases, the public and private interests at stake are such that the administration of justice may best be served by appointing a lawyer to represent an indigent civil litigant." *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996). Whether exceptional circumstances warranting the appointment of counsel exist is determined on a case-by-case basis. *Gibson,* 102 S.W.3d at 713.

We cannot conclude that this divorce case presents exceptional circumstances that require the appointment of counsel. *See In re Marriage of Martinez*, No. 07-99-00056-CV, 1999 WL 994389, at *2 (Tex. App.—Amarillo Nov. 2, 1999, no pet.) (not designated for publication) (holding that because no evidence was presented supporting a finding that his case represented an exception entitling him to appointed counsel and because appellant was not in danger of deprivation of liberty resulting from his divorce proceeding, appellant was not entitled to appointed counsel). Thus, we hold that the trial court did not abuse its discretion by failing to make such an appointment. We overrule Robert's fifth issue.

## V. REQUESTS TO CHANGE THE FINAL DECREE WERE NOT PRESERVED

Robert's first through fourth, seventh, ninth, and tenth issues deal with requests to change the final decree other than his request that the property

6

division in the decree be changed. Importantly, Robert does not challenge any portion of the trial court's written decree as legally flawed, nor does he cite to any case law for such a proposition; rather, he asserts that the final decree should be modified because it varied from the trial court's oral ruling.

For thirty days after the trial court signed the final decree, it had plenary power to modify its written judgment. *See* Tex. R. Civ. P.329b(d). Robert did not file any type of post judgment motion requesting that the trial court modify, correct, or reform the judgment in the various ways he seeks to have us do in his first through fourth, seventh, ninth, and tenth issues. *See* Tex. R. Civ. P. 316, 329b(g). Robert thus waived any error by not presenting these issues to the trial court. *See* Tex. R. App. P. 33.1(a); *Stallworth v. Stallworth*, 201 S.W.3d 338, 349 (Tex. App.—Dallas 2006, no pet.) (holding that because wife did not file a post-judgment motion for new trial arguing that the final decree did not match the oral pronouncement, she waived any error). We overrule Robert's first through fourth, seventh, ninth, and tenth issues.

## VI. Equitable Division of Marital Estate

In his eleventh and thirteenth issues, Robert argues that all debts, which were entered into jointly by the parties, should be the sole responsibility of Kathy and that this court should consider a more equitable division of the property.

7

The trial court has wide discretion in dividing the parties' community estate. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981); *see generally* Tex. Fam. Code Ann. § 7.001 (Vernon 2008). The trial court may consider such factors as the spouses' capacities and abilities; benefits which the party not at fault would have derived from continuation of the marriage; business opportunities, education, and relative physical conditions; relative financial condition and obligations; disparity of ages; size of separate estates; the nature of the property; and a disparity in earning capacities or of incomes. *Murff*, 615 S.W.2d at 699. The party attacking the property division bears the heavy burden of showing that the trial court's property division was not just and right. *Goetz v. Goetz*, 567 S.W.2d 892, 896 (Tex. Civ. App.—Dallas 1978, no writ). We must indulge every reasonable presumption in favor of the trial court's proper exercise of its discretion. *Vannerson v. Vannerson*, 857 S.W.2d 659, 669 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

One who complains of the trial court's division of property must be able to demonstrate from evidence in the record that the division was so unjust and unfair as to constitute an abuse of discretion. *Finch v. Finch*, 825 S.W.2d 218, 221 (Tex. App.—Houston [1st Dist.] 1992, no writ). A trial court's division will not be disturbed on appeal unless it appears from the record that the division was clearly the result of an abuse of discretion. *Mogford v. Mogford*, 616

8

S.W.2d 936, 944 (Tex. Civ. App.—San Antonio 1981, writ ref'd n.r.e.). The test for whether the trial court abused its discretion is whether the court acted arbitrarily or unreasonably. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–43 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986); *see also Wilson v. Wilson*, 44 S.W.3d 597, 600 (Tex. App.—Fort Worth 2001, pet. denied). And where the record does not contain findings of fact and conclusions of law, it is implied that the trial court made all necessary findings to support its judgment. *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 83 (Tex. 1992).

Here, Robert's arguments center on whether the division of the debts and community property was properly deemed just and right by the trial court.[5] The final decree awards all property to Kathy and requires Robert to pay all debts, charges, liabilities, and obligations held solely in his name or held jointly in his and Kathy's name. Evidence that would support an unequal distribution of property include the facts that Robert was in prison for possession of child pornography and that Kathy was left to provide for the minor child. The record before us, moreover, does not detail the types of debt or the items that made

---

[5] ... To the extent that Robert's eleventh and thirteenth issues might also encompass an argument that the division in the final decree does not match the division announced in court, our analysis above in section V disposes of that argument.

up the community property, nor does the record contain values of the debts or the community property. As stated by the Corpus Christi Court of Appeals in *Choate v. Choate*,

> It is virtually impossible, without inventories admitted into evidence and findings by the court, for us to ascertain the propriety of appellant's claims. [Citation omitted.] The responsibility, after all, for the initial factual determinations, the determination of the credibility of the witnesses, and for weighing the evidence, falls on the shoulders of the able trial judge, not the appellate court. Thus, we believe appellant does not, and probably cannot, bear his burden of demonstrating an abuse of discretion.

No. 13-01-00575-CV, 2002 WL 34230965, at *2 (Tex. App.—Corpus Christi Aug. 8, 2002, no pet.) (not designated for publication). We hold that the trial court did not abuse its discretion in dividing the parties' community estate. We therefore overrule Robert's eleventh and thirteenth issues.

## VII. No Relief Available

In his sixth, eighth, and twelfth issues, Robert reserves the right to paternity testing, requests this court to remind Kathy of her duties under the decree, and states that he did not sign the decree and will not sign it in the current form. None of these requests were presented to the trial court, nor can we discern any relief concerning these issues that is available to Robert from

this court.[6]  We therefore overrule Robert's sixth, eighth, and twelfth issues.
*See* Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1).

VIII.  CONCLUSION

Having overruled all thirteen of Robert's issues and having held that there is no relief available from this court, we affirm the trial court's judgment.

PER CURIAM

PANEL: WALKER, J.; CAYCE, C.J.; and LIVINGSTON, J.

DELIVERED:  December 17, 2009

---

[6] The same is true for the portion of Robert's third issue that requests a detailed child support account balance.  This is not something that our court can provide to him.

11