Opinion issued April 10, 2003




            




  






In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-01-00371-CV
____________
 
RITA KARBALAI, INDIVIDUALLY AND D/B/A
CARBY MOBILE HOME PARK, Appellant
 
V.
 
HOUSHANG SOLHJOU, INDIVIDUALLY AND D/B/A
MELROSE MOBILE HOME PARK, Appellee
 
 
* * * * *
 
HOUSHANG SOLHJOU, INDIVIDUALLY AND D/B/A
MELROSE MOBILE HOME PARK, Appellant
 
V.
 
RITA KARBALAI, INDIVIDUALLY AND D/B/A
CARBY MOBILE HOME PARK, Appellee
 

 
 
On Appeal from the 61st District Court
Harris County, Texas
Trial Court Cause No. 2000-33731
 

 

MEMORANDUM OPINION
          Appellant/cross-appellee, Rita Karbalai, individually and d/b/a Carby Mobile
Home Park (together “Karbalai”), challenges the trial court’s judgment following a
bench trial concerning the operation of a sewage treatment plant owned and operated
by appellee/cross-appellant, Houshang Solhjou, individually and d/b/a Melrose
Mobile Home Park (together “Solhjou”), located on land adjacent to Karbalai’s
mobile home park.
          In five issues, Karbalai argues that the trial court erred in: (1) essentially
“transferring” civil and administrative penalties assessed against Solhjou for
violations of environmental regulations in the operation of the plant into damages
recoverable by Solhjou against Karbalai; (2) awarding damages to Solhjou for breach
of contract; (3) finding that Karbalai’s acts and/or omissions proximately caused the
violations in the operation of the plant; (4) rendering judgment without sufficient
evidence to support its findings of fact and conclusions of law; and (5) failing to
award damages to Karbalai on her claims for breach of contract and attorney’s fees.
          In two cross-issues, Solhjou appeals the trial court’s rulings (1) offsetting the
amount of damages awarded to Solhjou with the amount of damages the trial court
found were sustained by Karbalai due to Solhjou’s negligence and (2) denying an
award of attorney’s fees to Solhjou on his breach of contract claim.
          We reverse and render in part and affirm in part.
Facts and Procedural Background
          Karbalai’s late husband, John Karbalai, and Solhjou formed a partnership
which owned and operated the Melrose Mobile Home Park.


 In 1990, as part of the
settlement of a lawsuit filed by John Karbalai against Solhjou, the partnership was
dissolved and its property and assets were divided. John Karbalai and Solhjou signed
a settlement agreement which, among other things, divided the property containing
the Melrose Mobile Home Park into two separate tracts.
          Under the terms of the 1990 settlement agreement, Solhjou kept the right to the
name “Melrose Mobile Home Park” (Melrose), under which he continued to operate
a mobile home park with approximately 60 units on his tract. Solhjou’s tract also
contained the sewage treatment plant at issue. John Karbalai’s tract, located adjacent
to Solhjou’s and containing approximately 25 units, was renamed Carby Mobile
Home Park (Carby).
          The 1990 settlement agreement provided for the use and operation of the
sewage treatment plant as follows:
Solhjou shall own the Plant and for so long as he operates it, agrees to
maintain the Plant and its collection system in good working condition
and in compliance with all applicable statutes and regulations. Solhjou
shall use reasonable skill and care in the operation and maintenance of
the Plant. In the event service is interrupted, notwithstanding the fault
of Solhjou, Solhjou agrees to use reasonable diligence in resuming said
service, except as otherwise provided for herein.
 
For so long as Solhjou, his successors or assigns[,] operates the Plant,
Karbalai shall have use of the Plant and shall pay to Solhjou . . . [a
$15.00] monthly [fee] for each active and in use hook-up to the Plant. 
Karbalai shall have the use of all Plant capability in excess of that
being utilized for [Solhjou’s tract].
 
For so long as Solhjou, his successors or assigns[,] . . . operates the
Plant, Karbalai shall have the right to utilize the Plant as provided for .
. . above.

(Emphasis added.) Solhjou and John Karbalai also signed a use agreement containing
the same terms regarding “the use of that certain 40,000 gallon sewage treatment
plant.”
          The Texas Natural Resource Conservation Commission (TNRCC) issued, and
subsequently renewed, permits to Solhjou, as operator of the sewage treatment plant,
to “treat and dispose of wastes” in accordance with the relevant provisions of the
federal Clean Water Act and the Texas Water Code. The permit issued by the
TNRCC authorized Solhjou to dispose of no more than 40,000 gallons of effluent per
day from the plant, and the permit set limitations on the amounts and types of
chemical and organic materials discharged from the plant. Solhjou hired Shannon
Marsh, a certified sewage treatment plant operator employed by Aqua Pure, to
oversee the day-to-day operations and maintenance of the plant.
          In 1996, John Karbalai asked Solhjou about the development of approximately
30 unoccupied lots at Carby and the process for hooking them up to the plant. 
Solhjou responded by offering either to allow John Karbalai to take over the
operation and maintenance of the plant or to divide the operating and maintenance
costs between them equally. John Karbalai died in 1997 and his wife, Rita Karbalai,
succeeded to his interests in Carby. No expansion of Carby occurred until the
summer of 1998, when Karbalai, with the assistance of her park manager, Ronnie
Swint, began adding approximately 50 mobile home units to her tract, all of which
were connected to the plant at issue. Karbalai also began submitting to Solhjou an
increased number of hook-up fees to cover the added units.
          At the time the expansion of Carby began, Solhjou sent a letter to Karbalai
noting the plant’s “limited capacity” and objecting to the expansion on the grounds
that “our sewer plant cannot handle any more waste water than we presently have.” 
Solhjou also complained to Karbalai about the increase in the amount of hook-up fees
she was paying as exceeding the amount required for Carby’s original 25 units and
requesting that she “maintain the 25 existing spaces and do no[t] hook up new
spaces” to the plant. However, Solhjou never returned any portion of the “excess”
fees.
          In January 2000, Marsh informed Solhjou that, in accordance with their
conversations “during the last six months,” in Marsh’s opinion, the plant had become
“increasingly harder to operate” as a result of the Carby expansion and was
“organically overloaded.” Marsh recommended the addition of a new clarifier and
consultation with an engineer to review the plant design as corrective measures to
bring the plant “back into compliance.”



          In a February 2000 letter, the City of Houston informed Solhjou that, based on
its testing of effluent samples from the plant, the plant was out of compliance with
two of the permitted discharge limits set by the TNRCC. In an April 2000 letter, the
TNRCC informed Solhjou that its inspection identified several violations of the
plant’s permit, dating back to April 1999, and that the TNRCC was initiating an
enforcement action. In May 2000, the Harris County Pollution Control Division
delivered a violation notice to Solhjou concerning its inspection of the plant
informing him that the County’s inspection had determined that the plant was out of
compliance with its permitted discharge limits.
          Harris County subsequently brought suit against Solhjou based on his alleged
violations of provisions of the Water Code


 and the Health and Safety Code


 in the
operation of the plant. Harris County sought civil penalties for the statutory
violations and a temporary injunction to stop the discharge of all sewage from the
plant and require that all wastewater flowing into the plant be pumped and hauled to
an approved disposal site. The trial court granted the injunction, and Solhjou began
paying for the pumping and hauling of all sewage flowing into the plant on July 1,
2000.



          Solhjou then filed a third-party petition asserting claims for breach of contract,
trespass, and malice against Karbalai and Swint and seeking recovery of his costs and
attorney’s fees.


 Solhjou also sought an injunction to force Karbalai to disconnect all
Carby units from the plant and to pump and haul all sewage from those units. In
response to Solhjou’s claims, Karbalai filed a general denial and a counterclaim for
breach of contract, negligence, and gross negligence. Solhjou answered the
counterclaim with a general denial and pleaded Karbalai’s contributory negligence
as a defense. The parties subsequently entered into a Rule 11 agreement


 to
disconnect the sewage disposal lines for all Carby units from the plant by July 25,
2000.
          Following a bench trial, the trial court found that Karbalai had breached the
terms of the 1990 settlement agreement “by knowingly overloading [the plant]
beyond the excess permitted” and was negligent in expanding the number of Carby
units hooked-up to the plant and continuing to discharge sewage from those units into
the plant “despite undocumented protests from Solhjou.” The trial court found that,
“[A]s a direct and proximate result of [Karbalai’s] . . . breach of contract,” Solhjou
sustained damages in the form of civil penalties and costs to pump and haul the
sewage received by the plant during July 2000. The trial court awarded Solhjou
damages equal to 59 percent of the civil penalties assessed against him,


 as well as
a similar percentage of his pumping and hauling costs for the month of July 2000, for
a total of $51,122.91.



          The trial court also found that Solhjou was negligent in his oversight of the
operation of the plant and breached the terms of the 1990 settlement and use
agreements by “ not maintaining and operating [the plant] adequately and reasonably,
and in allowing permit violations . . . to occur . . . where he could have taken
reasonable steps to prevent said violations” and in refusing to reconnect the 25
original Carby units to the plant after he was permitted to resume operating the plant. 
The court awarded Karbalai $26,968.75 as her costs for the pumping and hauling of
waste from the 25 original Carby units after Solhjou resumed plant operations.


 As
a result of this offset, the trial court awarded damages to Solhjou totaling $24,154.16.
          The parties stipulated that they each incurred reasonable attorney’s fees of
$35,000 for trial and stipulated to fees of $10,000 for an appeal to the court of appeals
and $5,000 for an appeal to the Texas Supreme Court. The trial court did not award
attorney’s fees to either party.
Breach of Contract
          In her second issue, Karbalai argues that the trial court erred in finding that she
breached the 1990 settlement agreement and in awarding damages to Solhjou based
on his breach of contract claims.
          The trial court found that Karbalai breached the terms of the settlement
agreement by “knowingly overloading” the plant operated by Solhjou. The trial court
also concluded that Karbalai breached the settlement agreement by introducing
sewage into the plant “in excess of that allowed or contemplated by the settlement
agreement.”
          Karbalai contends that Solhjou waived his breach of contract claim by
accepting her payments for the hook-up of additional Carby mobile home units to the
plant. The affirmative defense of waiver can be asserted against a party who
intentionally relinquishes a known right or engages in intentional conduct
inconsistent with claiming that right. Tenneco Inc. v. Enter. Prods. Co., 925 S.W.2d
640, 643 (Tex. 1996). A party may waive its contractual rights. Id. While a party’s
express renunciation of a known right can establish waiver, its silence or inaction for
so long a period of time as to show its intention to yield a known right is also enough
to prove waiver. Id. Waiver is ordinarily a question of fact; however, where the facts
and circumstances are admitted or clearly established, the question becomes one of
law. Id.
          Here, Solhjou testified that, when he first received a check from Karbalai for
monthly hook-up fees covering more than the original 25 units, he returned the check
to her. However, he also testified that Karbalai subsequently re-sent the check to him,
and he cashed it. Solhjou also admitted that, from 1998 until June 2000, he did not
protest Karbalai’s payment of monthly hook-up fees for as many as 74 units, and that,
in fact, he kept those fees. On cross-examination, Solhjou admitted that he was aware
he did not have to keep the payments for the additional hook-up fees.
          Waiver is an affirmative defense that must be pled. Tex. R. Civ. P. 94. 
Solhjou argues that, because Karbalai did not plead the affirmative defense of waiver
in her pleadings, she may not raise it as an issue on appeal. Karbalai concedes that
she did not plead waiver in her answer or counterclaim, but she asserts that the issue
of waiver was tried by consent.
          An affirmative defense my be tried by consent, even if it is not properly
pleaded. Tex. R. Civ. P. 67; Johnston v. McKinney Am., Inc., 9 S.W.3d 271, 280
(Tex. App.—Houston [14th Dist.] 2000, pet. denied). A party who allows an issue
to be tried by consent, and who fails to challenge the lack of a pleading before
submission of the case, cannot later raise the pleading deficiency for the first time on
appeal. Roark v. Stallworth Oil & Gas, Inc., 813 S.W.2d 492, 495 (Tex. 1991); Nat’l
Convenience Stores, Inc. v. Erevia, 73 S.W.3d 518, 522 (Tex. App.—Houston [1st
Dist.] 2002, pet. denied).
          Here, Solhjou testified without objection, on direct and cross-examination,
regarding his receipt and retention of the payments for the additional hook-ups, and
his understanding that he was not required to keep such payments. The trial court
also found that he accepted such payments.


 We conclude that the issue of waiver
was tried by consent.
          We hold that Solhjou’s admitted inaction in keeping the additional monthly
hook-up fees established, as a matter of law, his intention to waive any breach of
contract claim he may have had arising from Karbalai’s connection of additional
Carby mobile home units to the plant.
          We sustain Karbalai’s second issue.
Negligence
          In her third issue, Karbalai contends that the trial court erred in finding that any
acts or omissions by her constituted negligence, which proximately caused the
violation of environmental regulations in the operation of the plant.
          In its findings of fact and conclusions of law, the trial court found both parties
were negligent but made no findings or conclusions apportioning negligence between
the parties. Moreover, the trial court did not award Solhjou any damages based on
Karbalai’s negligence, but specifically identified the damages awarded to Solhjou as
“a direct and proximate result of [Karbalai’s] breach of contract.” (Emphasis added.) 
Because the trial court did not award any damages to Solhjou based on its finding of
negligence against Karbalai, we hold that any possible error by the trial court in
finding Karbalai’s conduct negligent was harmless. Tex. R. App. P. 44.1(a).
          We overrule Karbalai’s third issue.
Damages Awarded to Solhjou
          In her first issue, Karbalai argues that, in assessing damages, the trial court
erred in essentially “transferring civil and administrative penalties assessed against
Solhjou for violations of law in operating the sewage treatment plan[t] as damages
against Karbalai.” Similarly, in her fourth issue, Karbalai contends that the trial
court’s findings of fact “do not support its conclusions of law” with regard to the trial
court’s award of damages in favor of Solhjou.
          Because the trial court did not award any damages to Solhjou based on its
finding that Karbalai was negligent, and because we have held that the evidence
established, as a matter of law, that Solhjou’s claims against Karbalai for breach of
contract were barred by waiver, precluding Solhjou from recovering any damages on
that claim, we need not address Karbalai’s first or fourth issues.
Karbalai’s Counterclaims
          In her fifth issue, Karbalai argues that the trial court erred in “not awarding the
appropriate damages after it found Solhjou had breached the Settlement Agreement
and had negligently maintained and operated the plant.” Karbalai contends that she
was entitled to more actual damages than the trial court awarded on her counterclaims
against Solhjou for negligence and breach of contract. She also argues that she was
entitled to recover her stipulated attorney’s fees as required by the 1990 settlement
agreement.
Actual Damages
          Karbalai’s conclusory argument on this issue is unsupported by any authority. 
In general, when a party does not provide us with argument sufficient to make an
appellate complaint viable, we will not perform an independent review of the record
and applicable law to determine whether the error complained of has merit. 
Maranatha Temple, Inc. v. Enter. Prods. Co., 893 S.W.2d 92, 106 (Tex.
App.—Houston [1st Dist.] 1994, writ denied).
          Here, we construe Karbalai’s fifth issue as a legal sufficiency challenge to the
trial court’s finding


 concerning the amount of actual damages sustained by Karbalai
as a result of Solhjou’s “breach of contract and/or [his] negligence.”
          In an appeal of a judgment rendered after a bench trial, the trial court’s findings
of fact have the same weight as a jury’s verdict. Amador v. Berrospe, 961 S.W.2d
205, 207 (Tex. App.—Houston [1st Dist.] 1996, writ denied). When challenged,
findings of fact are not conclusive if, as in the present case, there is a complete
reporter’s record. See id. When there is a reporter’s record, the trial court’s findings
of fact are binding only if supported by the evidence. Id. If the findings are
challenged, the court of appeals will review the sufficiency of the evidence
supporting the findings. State Bar of Tex. v. Roberts, 723 S.W.2d 233, 235 (Tex.
App.—Houston [1st Dist.] 1986, no writ).
          In reviewing a no-evidence point, we consider only the evidence and inferences
that tend to support the finding, disregarding all evidence and inferences to the
contrary. Best v. Ryan Auto Group, Inc., 786 S.W.2d 670, 671 (Tex. 1990);
Vannerson v. Vannerson, 857 S.W.2d 659, 666 (Tex. App.—Houston [1st Dist.]
1993, writ denied). If there is any evidence of probative force to support the finding,
i.e., more than a mere scintilla, we will overrule the point. Vannerson, 857 S.W.2d
at 666.
          Here, the trial court awarded Karbalai damages in an amount equal to what the
court determined was Karbalai’s share of the costs to pump and haul effluent from the
sewage treatment plant beginning in July 2000 until the time of trial. Karbalai
contends that this amount of damages was insufficient because it did not include her
anticipated and expended costs to construct a new treatment plant for the Carby units,
as well as the loss of rental income from the lots on which such a plant would need
to be constructed.
          The record indicates that, after the plant was shut down, the parties entered into
a voluntary agreement to temporarily cut off the Carby units from the sewage
treatment plant and to cover their own costs of pumping and hauling the sewage from
their respective units.


 With regard to Karbalai’s subsequent loss of rental income
from approximately 20 vacant lots, Ronnie Swint, Carby’s manager, testified as
follows:
I made the decision not to renew leases. And as a result of that decision,
the tenants became very nervous by living on a month-to-month tenancy. 
They expressed concern that the park was going to be shut down. There
was a rumor that was floating. People started moving out, relocating
their homes to other mobile home parks. Some of them were
repossessed, too. Some of them just gave up and walked away.

Based on this testimony, the trial court could have concluded that Karbalai’s loss of
rental income was based upon the decision not to renew leases beyond one month
increments, rather than negligence or a breach of contract on the part of Solhjou.
          With regard to the costs of constructing a new treatment plant to serve the
Carby units, Swint testified that, with the exception of a $3,450 fee to prepare the site
and pour a concrete slab of a new treatment plant, at the time of trial no other
construction expenses had been incurred. Swint testified, without objection, that the
remaining anticipated construction expenses were merely estimates provided to him
by Shannon Marsh or other third parties.
          A trial court, when sitting as the trier of fact, is the sole judge of the credibility
of the witnesses and the weight to be given their testimony. Villery v. Solomon, 16
S.W.3d 106, 110 (Tex. App.—Houston [1st Dist.] 2000, no pet.); Nordstrom v.
Nordstrom, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, writ denied). 
Here, the trial court could have concluded that Swint’s second-hand estimates
concerning the costs to construct a new treatment plant were neither reasonable nor
credible.
          Disregarding all evidence and inferences to the contrary, we hold that the trial
court’s award of actual damages to Karbalai was supported by more than a scintilla
of evidence. See Vannerson, 857 S.W.2d at 666.
          We overrule this portion of Karbalai’s fifth issue.
 
Attorney’s Fees
          The trial court did not award attorney’s fees to either party, having found that
both were in breach of the contract. However, because we have held that Solhjou’s
breach of contract claim against Karbalai was barred by waiver, leaving Karbalai’s
breach of contract action as the only prevailing contractual claim, we render judgment
for Karbalai for the amounts of attorney’s fees stipulated by the parties at trial. See
Tex. Civ. Prac. & Rem. Code Ann. § 38.001 (Vernon 1997).
          We sustain this portion of Karbalai’s fifth issue.
Solhjou’s Cross-Issues
          In his first cross-issue, Solhjou argues that the trial court should not have
applied an offset to the damages he was awarded because, under the terms of the
parties’ Rule 11 agreement, Karbalai voluntarily disconnected the Carby units from
the sewage treatment plant.
          We disagree. The Rule 11 agreement, which appears in the record, provided
that, as of July 25, 2000, Karbalai would initiate her own sewage removal and
disposal for all Carby units connected to the plant, not just those in excess of the
original 25 units. However, the agreement also expressly provided that the parties
agreed to preserve their respective claims and legal positions regarding their dispute. 
Thus, the letter did not act to waive any of the parties’ claims—it merely provided a
temporary solution to the parties’ mutual need to remove and dispose of the sewage
from their units, as the plant had been shut down by the TNRCC and Harris County
at that time and could not be used by either party.
          Solhjou also contends that the trial court erred in finding that he was negligent
in “his oversight of the operation of the plant” and in concluding that he was
negligent in “his supervision of the operation of the [plant].”


 In its final judgment,
the trial court awarded damages to Karbalai both for Solhjou’s breach of contract and
for negligence.
          As noted above, we review a challenge to the legal sufficiency of the evidence
to support a trial court’s finding of fact to determine whether there is any evidence
of probative force to support the finding, disregarding all evidence and inferences to
the contrary. Vannerson, 857 S.W.2d at 666. We review a trial court’s conclusions
of law de novo. BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 793-94
(Tex. 2002). Although we may not review conclusions of law for factual
insufficiency, we may review the trial court’s legal conclusions drawn from the facts
to determine their correctness. Id.
          Specifically, Solhjou argues that the trial court’s finding of fact and conclusion
of law that he was negligent were improper and inconsistent with the trial court’s
other findings of fact and conclusions of law that Solhjou’s retained plant operator,
Marsh, was not negligent.
          We disagree. As indicated above, the evidence admitted at trial included letters
sent from Marsh to Solhjou in 2000 requesting that Solhjou take certain steps
necessary, in Marsh’s opinion, to bring the treatment plant “back into compliance.” 
It is undisputed that, other than minor repairs to the plant, the measures recommended
by Marsh, which included installing an additional clarifier, converting the existing
clarifier to aeration, and increasing the air supply to the plant, were not implemented. 
Therefore, we hold that the trial court’s findings of fact and conclusions of law, that
Solhjou was negligent while Marsh was not negligent, were supported by the
evidence and were not inconsistent.
          We overrule Solhjou’s first cross-issue.
          In his second cross-issue, Solhjou contends that he was entitled to recover his
stipulated attorney’s fees. Because we have held that Solhjou’s breach of contract
claim was barred by waiver, we overrule his second cross-issue.
Conclusion
          We reverse that portion of the trial court’s judgment finding that Karbalai
breached the contract with Solhjou, and we render judgment that Solhjou take nothing
on his breach of contract claim against Karbalai. We also reverse that portion of the
trial court’s judgment requiring Karbalai to bear the cost of her attorney’s fees, and
we render judgment in favor of Karbalai on her claim for attorney’s fees in the
amounts stipulated.
          We affirm the remainder of the trial court’s judgment.




                                                                        Terry Jennings
                                                                        Justice

Panel consists of Chief Justice Radack and Justices Nuchia and Jennings.