# In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-16-00250-CV

_____

### IN THE INTEREST OF T.G., K.W. AND K.C.

**On Appeal from the 279th District Court**
**Jefferson County, Texas**
**Trial Cause No. F-224,949**

## MEMORANDUM OPINION

In two issues, Appellant S.W. (Mother or Appellant) appeals the trial court's orders modifying the parent-child relationship as to three of her children, T.G., K.W., and K.C.[1] We affirm.

### PROCEDURAL BACKGROUND

On September 9, 2015, the Department of Family and Protective Services (the Department) filed an Original Petition for Protection of a Child, for

---

[1] We use initials to protect the identity of the children. *See* Tex. R. App. P. 9.8. Other family members are also identified, as necessary, by initials or designations based on their respective relationship with each child. *See* Tex. Fam. Code Ann. § 109.002(d) (West 2014); Tex. R. App. P. 9.8.

1

Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship (the Original Petition) as to four of Mother's children.[2] In the Original Petition, the Department alleged there was "an immediate danger to the physical health or safety of the child[ren], or the child[ren] has/have been the victim[s] of neglect or sexual abuse[]" and requested to be named temporary sole managing conservator of the children without notice or an adversary hearing, as provided in Chapter 262 and section 105.001(a)(1) and (h) of the Texas Family Code.

The Original Petition included an Affidavit for Emergency Removal (Affidavit) sworn by Runday Young (Young), an investigator with the Department. According to the Affidavit, on or about September 4, 2015, the Department received a report of Mother's neglectful supervision of the children. The Affidavit alleged that one of Mother's neighbors called the police at about 7:42 a.m. because Mother was screaming, yelling, and holding her daughter K.C., who was then three years old, in a strong embrace. The Affidavit further alleged that Mother was attempting to perform CPR and "was yelling for [K.C.] to start breathing, although

---

[2] Of the three children who are the subject of this appeal, T.G. and K.W. are boys, and K.C. is a girl. The Original Petition addressed a fourth child, a girl whose initials are also K.W. and whose father is S.B. According to the record, S.B. was granted temporary managing conservatorship of the fourth child on October 6, 2015. The proceedings and orders with respect to Mother's fourth child are not before us in this appeal; therefore, we do not address any allegations regarding the fourth child in this opinion.

[K.C.] was already breathing and nothing appeared to be medically wrong with [K.C.]" An Emergency Medical Service (EMS) medic examined K.C. and found nothing medically wrong with her. According to the Affidavit, Mother admitted to a police officer and to EMS that she had smoked synthetic marijuana earlier that morning and that she had smoked synthetic marijuana for a long time. The Affidavit also stated that Mother "has extensive history with this agency which dates back to 2007 - including cases of physical abuse and neglectful supervision due to her drug abuse."

When Young arrived at the home, Mother had dilated pupils and a slow response time and appeared to be under the influence of drugs. Mother was informed that she would be required to "make a placement" for her four children because of Mother's recent drug use and to assure the children's safety. According to the Affidavit, the only placement Mother identified was her eighty-year-old grandmother, who required home health care due to multiple health problems. The Affidavit also alleged that Mother refused to provide contact information for the children's fathers because she did not want the children placed with their fathers. The children were then placed in foster care, and the Department requested temporary conservatorship of all four children "due to [Mother's] continuous drug

abuse and inability to be a protective parent [whereby] she places her children at substantial risk of danger."

On September 22, 2015, the trial court entered orders naming L.G. as father of the two boys, T.G. and K.W., and naming J.C. as the father of the girl K.C. On October 8, 2015, and after a hearing, the trial court signed a temporary order in which the Department was named temporary sole managing conservator of T.G., K.W., and K.C. Service plans for Mother as to T.G., K.W., and K.C. were filed with the court on October 21, 2015, and February 29, 2016. On November 3, 2015, the trial court entered a Status Hearing Order in which the court ordered T.G. and K.W. placed with L.G. "as a monitored return[]" and pursuant to Department Rules.

On February 22, 2016, the Department filed a First Supplemental Petition joining K.C.'s paternal grandparents, Mr. and Mrs. C., as parties. A report by the Court Appointed Special Advocate (CASA) alleged that J.C., K.C.'s father, had expressed his desire for K.C. to be placed with him or with his parents and that J.C.'s parents had been providing care to K.C.

The trial court held a permanency hearing on March 1, 2016. At the permanency hearing, Tidra Henderson (Henderson), the CPS caseworker assigned to this matter, testified that Mother had not completed certain items required by her

service plan, namely anger management, psychiatric evaluation, and drug treatment, and that Mother had not obtained stable housing. Mother testified that she thought she had completed anger management and "everything else[]" except for substance abuse treatment, and that she was then living with her grandmother. The court advised Mother that failure to complete her service plan would "stand in the way" of getting her children back. After the hearing, the court signed a Permanency Hearing Order, setting a date for a Final Hearing. Attached to the Permanency Hearing Order was a Psychological Report for Mother, prepared by a licensed psychologist, which included the following:

> Current data *does warrant significant concerns* which would impede [Mother's] daily functioning or her capacity to be an independent and effective parent. . . . it is highly suggested that [Mother's] children continue to be placed under the care of a viable adult/caregiver, as [Mother] is unable to show that she is a psychologically capable, socially competent, financially independent, mature adult who is able to prioritize the welfare and safety of her children in all areas long-term.

### FINAL HEARING

The court held a final hearing on June 28, 2016. At the beginning of the hearing, counsel for the Department told the court "I believe that it's agreed. We just wanted to come and put what I understand to be the agreement and have the parents indicate whether they agree." After witnesses were sworn, the Department tendered Exhibit 1 to the court, which contained three Reports to the Court

completed by CASA and dated November 3, 2015, March 1, 2016, and June 28, 2016. The June 28, 2016 report (June report) noted that Mother had attended "most" of the scheduled visits with her children but that Mother did not appear for the family visit Mother had requested for K.C.'s birthday. The June report stated that Mother had failed "at least one random drug test[]" and that Mother was "unsuccessfully discharged" from an outpatient substance abuse treatment program "due to non-compliance." The June report also stated that Mother lacked stable housing of her own, did not have stable employment, and had not completed anger management. The June report concluded with the following recommendations:

1. Permanent managing conservatorship of [T.G.] and [K.W.] transferred to their biological father, [L.G.], and dismissing them from this case.
2. Permanent managing conservatorship of [K.C.] being transferred to her paternal grandparents, Mr. and Mrs. C[.], and dismissing her from this case.
3. Court ordered visitation schedule for [T.G.], [K.W.] and [K.C.] with their mother . . . .
4. The families continuing to arrange sibling visits between the children so they can maintain a relationship with each other.

Mother's attorney responded "I have no objections, Your Honor. I have reviewed it."

Henderson, the CPS caseworker, testified that she recommended that K.C.'s paternal grandparents be appointed managing conservators of K.C. Henderson also testified that T.G. and K.W. had been placed with their father L.G., that K.C. had

6

been placed with her paternal grandparents for "quite some time[,]" and that the children were well taken care of in these placements. Henderson also provided recommendations concerning Mother's visitation with the three children. According to Henderson, the children are happy in their current placements and the children liked seeing their mother.

Mother testified at the hearing and agreed she had heard "the proposed or the agreed order" that the trial court was going to sign. She also testified that she had experienced "some problems" with L.G. concerning visitation but "everything has been going fine[]" regarding K.C.'s paternal grandparents. Mother agreed she had not completed everything included in her service plan, namely anger management and drug treatment. At the time of the hearing, Mother was living with her sister.

At the conclusion of the hearing, the trial court explained "the only loose end[]" related to drug testing and the court proposed that

> . . . the managing conservators could require one drug test per month if they think there is reason to believe something is going on and that would be at her -- at her expense? If they want to -- you can -- if you make a second -- you can make a second request, but it would be at your expense. If she fails it, though, she pays you back.

Mother, L.G., and K.C.'s paternal grandparents agreed that the plan sounded fair to them.

The court encouraged the parties to "get along" and work out visitation issues, noting that "I don't want to mess this up because it sounds like you-all have got an agreement, and it sounds like that everyone is reasonably happy with it." The court also addressed child support for the children. At the conclusion of the hearing, the court stated:

> . . . I'll find that -- that the proposal -- the CPS proposal is in the children's best interest. So, [L.G.] will be the managing conservator of his kids [T.G. and K.W.]; and Mr. and Mrs. C[.] will be the managing conservators of the other child [K.C.].
> And the visitation as proposed is -- will be ordered, and the child support as I set out will be also ordered. And I'll find it's in the best interest of the children.

Mother's only questions at the hearing pertained to visitation matters and to her fourth child, K.W.

Following the hearing, on June 30, 2016, the court signed a "Final Order in Suit Affecting the Parent-Child Relationship as to [K.C.] Only" (Final Order as to K.C.). The Final Order as to K.C. appointed K.C.'s paternal grandparents, Mr. and Mrs. C., as permanent managing conservators and appointed Mother and J.C., K.C.'s father, possessory conservators of K.C. On June 30, 2016, the court also signed a "Final Order in Suit Affecting the Parent-Child Relationship as to [T.G.] and [K.W.] Only" (Final Order as to T.G. and K.W.). The Final Order as to T.G. and K.W. appointed L.G., father of T.G. and K.W., as permanent managing

8

conservator and appointed Mother as possessory conservator for T.G. and K.W. Both Final Orders included an attachment specifying certain conditions for Mother's possession and access of the children and an attachment concerning child support payments to be made by Mother. Mother appealed both Final Orders.

## ISSUES ON APPEAL

Appellant presents two issues on appeal. In her first issue, Appellant argues that the trial court erred in finding that appointment of Appellant as permanent managing conservator would not be in the best interest of her children because the evidence was legally and factually insufficient that Appellant would impair the physical or emotional well-being of the children. In her second issue, Appellant argues that the trial court erred in appointing L.G. as sole permanent managing conservator of T.G. and K.W. because the evidence that there had been a material and substantial change in circumstances since the rendition of the prior order was legally and factually insufficient.

## PRESERVATION OF ERROR

The State argues that Appellant has waived her issues for appeal because she consented or agreed to the final orders rendered in this case. Appellant did not file a reply brief or otherwise address consent and waiver.

A party cannot generally appeal from a judgment to which it has consented or agreed absent an allegation and proof of fraud, collusion, or misrepresentation. *See Authorlee v. Tuboscope Vetco Int'l, Inc.*, 274 S.W.3d 111, 119 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Boufaissal v. Boufaissal*, 251 S.W.3d 160, 161 (Tex. App.—Dallas 2008, no pet.); *Chang v. Nguyen*, 81 S.W.3d 314, 316 n.1 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (citing *Baw v. Baw*, 949 S.W.2d 764, 766 (Tex. App.—Dallas 1997, no writ)). A party's consent to a trial court's entry of judgment waives any error in the judgment, except jurisdictional error. *Chang*, 81 S.W.3d at 316 n.1. To have a valid consent judgment, each party must explicitly and unmistakably give its consent. *Id.* For a judgment to be considered an agreed or consent judgment, either the body of the judgment itself or the record must indicate that the parties came to some agreement as to the disposition of the case. *CommunityBank of Tex., N.A. v. Orange Cty. Ins. Brokerage, Inc.*, No. 09-14-00033-CV, 2016 Tex. App. LEXIS 9860, at *14 (Tex. App.—Beaumont Sept. 1, 2016, pet. filed) (mem. op.) (citing *DeClaris Assocs. v. McCoy Workplace Sols., L.P.*, 331 S.W.3d 556, 560 (Tex. App.—Houston [14th Dist.] 2011, no pet.)). A party who consents to an agreed judgment and fails to convey any withdrawal of consent thereby stipulates to the fact-findings contained in the agreed judgment and waives her ability to challenge those findings for legal and factual sufficiency.

10

*See Gonzalez v. Wells Fargo Bank, N.A.*, 441 S.W.3d 709, 714 (Tex. App.—El Paso 2014, no pet.).

At the final hearing, the Department's attorney notified the court that an agreement had been reached and that the plan was to name L.G. as permanent managing conservator of his sons T.G. and K.W., and the Department caseworker added that Mr. and Mrs. C., J.C.'s parents and K.C.'s grandparents, would be named permanent managing conservators of K.C. After the Department's attorney informed the court of an agreement and tendered the CASA reports into evidence, Mother's attorney stated "I have no objections, Your Honor. I have reviewed it." On direct examination, Mother's own attorney asked Mother "you've heard the proposed or the agreed order that the Court is going to sign[,]" and Mother replied "[c]orrect." At the conclusion of the hearing, the court stated "it sounds like you-all have got an agreement, and it sounds like that everyone is reasonably happy with it."

We conclude that the record indicates that the parties came to an agreement as to the case's disposition and that Mother agreed to the trial court's final orders as articulated at the final hearing by the attorney and the caseworker for the Department. *See CommunityBank of Tex., N.A.*, 2016 Tex. App. LEXIS 9860, at *14. Nothing in the record shows that Mother withdrew consent or agreement to

11

the final orders. The record indicates that Mother understood and agreed to the final orders, did not withdraw her consent, and on appeal, she does not raise jurisdictional error, fraud, collusion or misrepresentation. Therefore, we conclude she has waived error regarding the items she now seeks to raise in this appeal. *See Authorlee*, 274 S.W.3d at 119; *Chang*, 81 S.W.3d at 316 n.1.

SUFFICIENCY OF THE EVIDENCE

Nevertheless, even if Appellant had not otherwise waived error for appeal, based upon a review of the entire record we also overrule both of Appellant's issues because we cannot say that the trial court abused its discretion. The trial court's decision was neither arbitrary nor unreasonable.

In her first issue on appeal, Appellant argues that the trial court erred in finding the appointment of Mother as primary managing conservator would not be in the best interest of her children and that the evidence was legally and factually insufficient that Mother would impair the physical or emotional well-being of her children. Appellant argues that the Department did not satisfy its burden of proof because it "never established how the Appellant had endangered the well[-]being

12

of her minor children[]" and that the trial court made no findings of fact or conclusions of law.[3]

Trial courts have wide discretion to determine a child's best interest, including issues of custody, control, possession, and visitation. *Perez v. Williams*, 474 S.W.3d 408, 423 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982) and *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). Accordingly, we review a trial court's decision regarding the conservatorship of a child for an abuse of discretion. *In re J.A.J.*, 243 S.W.3d 611, 616 (Tex. 2007). A trial court does not abuse its discretion "as long as some evidence of a substantive and probative character exists to support [its] decision." *Perez*, 474 S.W.3d at 423. We will reverse a trial court's determination of conservatorship only if a review of the entire record reveals that the trial court's decision was arbitrary or unreasonable. *See J.A.J.*, 243 S.W.3d at 616; *Patterson v. Brist*, 236 S.W.3d 238,

---

[3] The record includes no request filed by any party for findings of fact and conclusions of law, nor do the briefs recite that any request was made. A trial court shall file findings of fact and conclusions of law within twenty days after a timely request is filed. *See* Tex. R. Civ. P. 296, 297. If there are no findings of fact or conclusions of law filed, we presume all factual disputes were resolved in favor of the trial court's ruling, and all findings necessary to support the judgment will be implied, provided they are supported by the record. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002); *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Sonnier v. Sonnier*, 331 S.W.3d 211, 214 (Tex. App.—Beaumont 2011, no pet.).

239-40 (Tex. App.—Houston [1st Dist.] 2006, pet. dism'd). We must view the evidence in the light most favorable to the trial court's decision and indulge every legal presumption in favor of its judgment. *See Trammell v. Trammell*, 485 S.W.3d 571, 575 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

The factfinder determines the weight to be given to the testimony and to resolve any conflicts in the evidence. *Chavez v. Chavez*, 148 S.W.3d 449, 457 (Tex. App.—El Paso 2004, no pet.) (citing *Lide v. Lide*, 116 S.W.3d 147, 151 (Tex. App.—El Paso 2003, no pet.)); *In re R.W.*, 129 S.W.3d 732, 742 (Tex. App.—Fort Worth 2004, pet. denied).

In an abuse of discretion review, legal and factual insufficiency are not independent grounds for asserting error but are merely relevant factors in assessing whether a trial court abused its discretion. *See Trammell*, 485 S.W.3d at 575; *Patterson*, 236 S.W.3d at 240 ("Sufficiency challenges are incorporated into an abuse of discretion determination.") (citing *McGuire v. McGuire*, 4 S.W.3d 382, 387 n.2 (Tex. App.—Houston [1st Dist.] 1999, no pet.)). Our review of a legal sufficiency issue requires us to consider only the evidence and inferences that tend to support the finding, disregarding all evidence and inferences to the contrary. *Trammell*, 485 S.W.3d at 575 (citing *Vannerson v. Vannerson*, 857 S.W.2d 659, 666 (Tex. App.—Houston [1st Dist.] 1993, writ denied)). If there is any evidence

14

of probative force to support the finding, that is, more than a mere scintilla, we will overrule a challenge to legal sufficiency. *Id.* In reviewing a factual sufficiency issue we must consider, weigh, and examine all of the evidence that supports and contradicts the finding. *Id.* We engage in a two-step inquiry asking: (1) did the trial court have sufficient information upon which to exercise its discretion, and (2) did the trial court err in its application of discretion? *See Chavez*, 148 S.W.3d at 456 (citing *Hodson v. Keiser*, 81 S.W.3d 363, 367 (Tex. App.—El Paso 2002, no pet.) and *Lide*, 116 S.W.3d at 151). The traditional sufficiency inquiry applies to the first question. *Id.* at 456-57. Once we have determined whether sufficient evidence exists, we must then decide whether the trial court made a reasonable decision, that is, whether the ruling was arbitrary or unreasonable. *Id.* at 457.

Texas law requires that, in determining the issues of conservatorship and possession of and access to the child, the best interest of the child shall always be the primary consideration of the court. *Danet v. Bhan*, 436 S.W.3d 793, 796 (Tex. 2014) (citing Tex. Fam. Code Ann. § 153.002). Courts have generally considered nine non-exclusive factors set out in *Holley v. Adams* in determining the best interest of the child, which include (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the

15

individuals seeking custody, (5) programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *See Patterson*, 236 S.W.3d at 240 (citing *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976)). The trial court has wide latitude in determining the best interests of a child. *Gillespie*, 644 S.W.2d at 451. A finding that appointment of a parent as managing conservator would significantly impair the child's physical health or emotional development is governed by a preponderance-of-the-evidence standard. *See J.A.J.*, 243 S.W.3d at 616 (citing Tex. Fam. Code Ann. § 105.005 and *Lewelling v. Lewelling*, 796 S.W.2d 164, 167 (Tex. 1990)).

The Affidavit attached to the Department's Original Petition reported that, when police and EMS responded to a call at Mother's home on September 4, 2015, Mother admitted she had used synthetic marijuana earlier that day and had used synthetic marijuana for a long time. The Affidavit described Mother's "extensive history" with the Department dating back to 2007, including cases of physical abuse and neglectful supervision due to Mother's drug abuse. The record includes

a service plan for Mother as to her children T.G., K.W., and K.C., which was signed by Mother and filed with the trial court on October 21, 2015. At the final hearing on June 28, 2016, Mother admitted she had not completed anger management or drug treatment. A June 28, 2016 CASA report stated that Mother had failed "at least one random drug test[]" and that Mother was "unsuccessfully discharged" from an outpatient substance abuse treatment program "due to non-compliance." The June CASA report also stated that Mother lacked stable housing of her own. The January 2016 psychological report concerning Mother stated in part that Mother "is unable to show that she is a psychologically capable, socially competent, financially independent, mature adult who is able to prioritize the welfare and safety of her children in all areas long-term."

L.G. testified at the final hearing that often, when he had made arrangements with Mother for her to visit T.G. and K.W., Mother would not show up. K.C.'s paternal grandfather testified that he and his wife were "fine[]" with the plan regarding conservatorship. Henderson, the CPS caseworker, testified at the final hearing that T.G., K.W., and K.C. were happy and well taken care of in their current placements. The guardian ad litem for the children also testified at the final hearing as follows:

> . . . I've visited with the children and I'm in agreement with this plan. I think that, you know, they -- they love their mom. But they -- I

know that they like the placements that they're in right now and the situations that they're in right now. So, I think it's a good thing.

After reviewing the entire record, we conclude that the evidence is legally and factually sufficient for the trial court to have concluded by a preponderance of the evidence that it was in the best interest of the children for L.G. to be appointed permanent managing conservator of T.G. and K.W. and for Mr. and Mrs. C. to be appointed permanent managing conservator of K.C. The trial court did not abuse its discretion, and we overrule Appellant's first issue on appeal.

In her second issue on appeal, Appellant argues that the trial court erred in appointing L.G. as sole managing conservator of T.G. and K.W. because "circumstances have materially and substantially [] changed since the rendition of the prior order[.]" Appellant argues L.G. had not played a major role in his children's lives for years, that L.G. cannot support his children financially, and that "there is a pending case with [the] Texas Attorney General office involving [L.G.] and Appellant in regard to child support."

Appellant contends that there is a rebuttable presumption that appointment of parents as joint managing conservators is in the best interest of the child. *See* Tex. Fam. Code Ann. § 153.131(b) (West 2016). Section 153.131(a) also provides in relevant part that

. . . unless the court finds that appointment of the parent or parents would not be in the best interest of the child because the appointment would significantly impair the child's physical health or emotional development, a parent shall be appointed sole managing conservator or both parents shall be appointed as joint managing conservators of the child.

*Id.* § 153.131(a). To rebut the presumption that a child should remain with a parent, a nonparent seeking managing conservatorship of a child must prove by a preponderance of the evidence that awarding custody to the parent would significantly impair the child's physical or emotional development. *Id.* A nonparent must also show the appointment of the parent as managing conservator would not be in the child's best interest. *Id.* § 153.002.

Citing to *In re V.L.K.*, 24 S.W.3d 338, 339-40 (Tex. 2000), the Department argues that

> . . . the case involving K.C. is an original proceeding subject to the parental presumption found in Tex. Family Code § 153.131[], and the case involving T.G. and K.W. is a modification under Chapter 156, and therefore is not subject to the parental presumption.

In *V.L.K.*, the Court held that "the parental presumption applies only in original custody determinations and does not apply in a modification suit." *Id.* The Court also explained that "under Chapter 153, the nonparent can rebut the parental presumption by showing that the appointment of the parent would significantly

19

impair the child's health or development." *Id.* at 341-42 (citing *Brook v. Brook*, 881 S.W.2d 297, 298 (Tex. 1994)).

Neither Appellant nor Appellee cite to the record or otherwise identify a prior order concerning conservatorship of T.G. and K.W. *See* Tex. R. App. P. 38.1(i). Neither the Department's Original Petition nor its First Supplemental Petition sought a modification under section 156.101. The Final Orders from which Appellant appeals do not refer to any prior orders or to any modifications of prior orders.

Appellant also fails to explain how the trial court erred in applying the parental presumption as to conservatorship of T.G. and K.W. *See* Tex. R. App. P. 38.1(i). The Final Order as to T.G. and K.W. appointed L.G. as sole managing conservator of T.G. and K.W., and because L.G. is the father of T.G. and K.W., it is unnecessary to determine whether the Department overcame the parental presumption because a *parent* was, in fact, appointed sole managing conservator of T.G. and K.W. *See* Tex. Fam. Code Ann. § 153.131(a). Furthermore, we need not decide whether the presumption should apply in this matter because "[a] court's primary consideration in any conservatorship case 'shall always be the best interest of the child.'" *See V.L.K.*, 24 S.W.3d at 342 (citing Tex. Fam. Code Ann. § 153.002).

We understand the remainder of Appellant's second issue to re-urge her argument that the evidence is not sufficient to support the trial court's final order as to T.G. and K.W. In particular, Appellant argues that the record includes evidence that L.G. lacked employment or income. Appellant also argues that the record indicates L.G. "had a history of being a user of illegal drugs." At the final hearing, Mother testified that L.G. owed more than $12,000 in child support, and the court responded that L.G. would have to pay Mother what he owed. Also at the final hearing, no witness testified that L.G. then had any substance abuse problems, but Mother testified that she had not completed substance abuse treatment.

We have already addressed Appellant's sufficiency argument above. After reviewing the entire record, we conclude that the evidence is legally and factually sufficient to support the final orders as to all three children and that the trial court did not abuse its discretion. We overrule Appellant's second issue on appeal.

Having overruled Appellant's issues on appeal, we affirm the orders of the trial court.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

21

Submitted October 13, 2016
Opinion Delivered December 8, 2016

Before Kreger, Horton, and Johnson, JJ.